ACCEPTED
03-14-00579-CR
3973430
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/30/2015 4:49:27 PM
JEFFREY D. KYLE
CLERK

SEE AMEND
BRF FLD ON
3/10/15

NO. 03-14-00579-CR

TO THE

THIRD COURT

OF APPEALS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

1/30/2015 4:49:27 PM

JEFFREY D. KYLE
Clerk

PERRY LEE PENNING,

Appellant

VS.

THE STATE OF TEXAS,

Appellee

Appeal in Cause No. 2012-209292

County Court at Law #7

Travis County, Texas

BRIEF FOR APPELLANT

CONNIE J. KELLEY
1108 Lavaca #110-221
Austin, Texas 78701
(512) 445-4504
(512) 478-2318 (fax)
warrentucker@grandecom.net
State Bar Number 11199600
Attorney for Appellant

# IDENTITY OF PARTIES AND
# COUNSEL PURSUANT TO Rule 38.1(a),
# TEXAS RULES OF APPELLATE PROCEDURE

Party and Appellee's Counsel:         State of Texas
                                      Travis County Attorney
                                      314 W. 11th St., Ste. 300
                                      Austin, TX 78701

State's Trial Attorney:               Laura Gorman
                                      Travis County Attorney's Office
                                      314 W. 11th St., Ste. 300
                                      Austin, TX 78701

Party/Defendant:                      Perry Penning
                                      Killeen, Texas

Defendant's Trial Attorney:           Bart Denum
                                      P.O. Box 5995
                                      Austin, TX 78763

Appellant's Attorney:                 Connie J. Kelley
                                      Attorney at Law
                                      1108 Lavaca #110-221
                                      Austin, Texas 78701

The Honorable Elizabeth Earle presided at trial.

TABLE OF CONTENTS

                                                                                    Page

Identity of Parties and Counsel ....................................................................i

Index of Authorities ...............................................................................iv

Statement of Case...................................................................................i

Statement Regarding Oral Argument ..........................................................i

Points of Error Presented ..................................................................... 1-2

POINT OF ERROR NO. ONE

THE TRIAL COURT ERRED IN REFUSING TO INCLUDE AN

INSTRUCTION ON THE NECESSITY DEFENSE UNDER PENAL

CODE §9.22 IN THE JURY CHARGE.  (R.R. VOL. 6 AT 197 &

C.R. AT 80-84).

POINT OF ERROR NO. TWO

THE TRIAL COURT ERRED IN REFUSING TO INCUDE AN

INSTRUCTION ON SELF-DEFENSE UNDER PENAL CODE

§9.31 IN THE JURY CHARGE.  (R.R. VOL. 6 AT 195-196 & C.R.

AT 80-84).

Statement of Facts.............................................................................. 2-4

Summary of Argument........................................................................ 4-5

Argument........................................................................................ 5-35

## TABLE OF CONTENTS (cont.)

Page

Prayer ...................................................................................................35

Certificate of Service ...........................................................................35

Certificate of Compliance ....................................................................36

Index of Authorities

Page

Cases:
Almanza v. State, 686 S.W.2d 157 (Tex. Crim. App. 1985) .................20, 25, 30, 35

Alonzo v. State, 353 S.W.3d 778 (Tex. Crim. App. 2011) .....................................27

Arline v. State, 721 S.W.2d 248 (Tex. Crim. App. 1986) .................................20, 30

Barron v. State, 353 S.W.3d 879 (Tex. Crim. App. 2011) ...............................23, 33

Boget v. State, 74 S.W.3d 23 (Tex. Crim. App. 2002) .................................26, 27, 29

Bowen v. State, 162 S.W.3d 226 (Tex. Crim. App. 2005) ....................13, 19, 21, 30

Bowen v. State, 187 S.W.3d 744 (Tex. App. –Ft. Worth 2006) ........................21, 30

Boykin v. State, 818 S.W.2d 782 (Tex. Crim. App. 1990) ............................9, 12, 27

Brazelton v. State, 947 S.W.2d 644 (Tex. App. –Ft. Worth 1997) ...................17, 18

Bufkin v. State, 207 S.W.3d 779 (Tex. Crim. App. 2006) .......................................14

Cornet v. State, 359 S.W.3d 217 (Tex. Crim. App. 2012) ... 6,7,9,10,11,12,13,23,33

Cornet v. State, 417 S.W.3d 446 (Tex. Crim. App. 2013) .....................20, 24, 30, 34

Fitzgerald v. State, 782 S.W.2d 876 (Tex. Crim. App. 1990) .................................17

Granger v. State, 3 S.W.3d 36 (Tex. Crim. App. 1999) ..........................................13

Guilbeau v. State, 193 S.W.3d 156 (Tex. App. –Houston [1st Dist] 2006) .............35

Hamel v. State, 916 S.W.2d 491 (Tex. Crim. App. 1996) .................................14, 25

Hatch v. State, 958 S.W.2d 813 (Tex. Crim. App. 1997) ........................................11

Page

Johnson v. State, 271 S.W.3d 359 (Tex. App. –Beaumont 2008) ............... 31, 34-35

Juarez v. State, 308 S.W.3d 398 (Tex. Crim. App. 2010) ..................................... 6, 7

Long v. State, 931 S.W.2d 285 (Tex. Crim. App. 1996) ........................................ 11

Miller v. State, 815 S.W.2d 582 (Tex. Crim. App. 1991) ........................... 13, 21, 31

Pennington v. State, 54 S.W.3d 852 (Tex. App. –Ft. Worth 2001) ......................... 18

Rodriguez v. State, 544 S.W.2d 382 (Tex. Crim. App. 1976) ................................. 29

Shaw v. State, 243 S.W.3d 647 (Tex. Crim. App. 2007) ........................................ 14

Stefanoff v. State, 78 S.W.3d 496 (Tex. App. –Austin 2002) ........................... 17, 18

Valentine v. State, 587 S.W.3d 399 (Tex. Crim. App. 1979) ................................. 26

VanBrackle v. State, 179 S.W.3d 708 (Tex. App. –Austin 2005) ........... 6, 14, 29, 31

Vasquez v. State, 830 S.W.2d 948 (Tex. Crim. App. 1992) ................. 21, 25, 30-31

Vernon v. State, 841 S.W.2d 407 (Tex. Crim. App. 1992) .............................. 23, 33

Villa v. State, 370 S.W.3d 787 (Tex. App. –Eastland 2012) .................................... 7

Villa v. State, 417 S.W.3d 455 (Tex. Crim. App. 2013) ........................................ 12

Walters v. State, 247 S.W.3d 204 (Tex. Crim. App. 2007) .................................... 26

Statutes and Rules:
Penal Code
  § 1.07 ...................................................................................... 6, 7, 9, 17
  § 2.03 ..............................................................................................22, 31
  § 9.02 ........................................................................................................6
  § 9.22 ................................................................................................6, 16, 17

# Index of Authorities

Page

§ 9.31.................................................................................6, 25, 26, 27, 28, 29
§ 22.05....................................................................................................19
§ 42.01..........................................................................9, 11, 12, 19, 22, 32
§ 46.035....................................................................................................11

Code of Criminal Procedure, Art. 36.14.........................................................20, 29

Other Authorities:
Dix & Schmolesky, 43 Tex. Prac. Series:
Criminal Practice and Procedure (3d ed. 2011)................... 13-14, 16, 17, 19, 22, 32

Other References:
American Heritage Dictionary of the English Language (3d ed. 1992)..................10

Black's Law Dictionary (6th ed. 1991)(abridged)...............................................8, 10

Black's Law Dictionary (7th ed. 2000)(abridged)...................................................28

Webster's II New College Dictionary (1999).........................................................10

Webster's Third International Dictionary of the English Language
(1961)(unabridged edition) ........................................................................8

## STATEMENT OF THE CASE

Appellant, Perry Penning, after a plea of not guilty, was found guilty by a jury of Disorderly Conduct under Penal Code, §42.01(a)(8) on May 15, 2014 in Travis County Court #7 (C.R. at 7 & 92). On May 22, 2014, the court sentenced him to serve 180 days in jail and a $2,000 fine, probated for 2 years. (C.R. at 93-94). Notice of Appeal was filed by the undersigned attorney Connie Kelley on June 20, 2014. (C.R. at 99). No motion for new trial was filed.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant believes that the issues raised herein can be adequately addressed in the briefs of the parties.

## POINTS OF ERROR

### POINT OF ERROR NO. ONE

THE TRIAL COURT ERRED IN REFUSING TO INCLUDE AN INSTRUCTION ON THE NECESSITY DEFENSE UNDER PENAL CODE §9.22 IN THE JURY CHARGE. (R.R. VOL. 6 AT 197 & C.R. AT 80-84).

### POINT OF ERROR NO. TWO

THE TRIAL COURT ERRED IN REFUSING TO INCUDE AN INSTRUCTION ON SELF-DEFENSE UNDER PENAL CODE

1

§9.31 IN THE JURY CHARGE.  (R.R. VOL. 6 AT 195-196 & C.R. AT 80-84).

## STATEMENT OF FACTS

This case involves a roadway encounter between Appellant and Complainant, Jerold Hill, age 22, on Highway 183 in Austin, Texas.  (R.R. Vol. 5 at 24 & 26-27).  Complainant drove a Buick LaSabre and Appellant a Volkswagen.  (R.R. Vol. 5 at 27 & Vol. 6 at 120).  It was late afternoon and traffic was "tight."  (R.R. Vol. 5 at 83).  Complainant had originally been in a lane that was ending, and his lane of traffic was supposed to merge into the lane to the left.  (R.R. Vol. 5 at 50-52 & 73-74).  Rather than waiting to merge, Complainant drove ahead on the right shoulder of the road.  (R.R. Vol. 5 at 74 & 82-83 & Vol. 6 at 119).  Appellant testified that when he saw Complainant "charging up" in his rearview mirror, Complainant was completely off the road, driving in the grass.  (R.R. Vol. 6 at 117).  As Complainant approached a guardrail before the Montopolis bridge, he "forced himself over", taking about one-third of Appellant's lane.  (R.R. Vol. 5 at 74 & Vol. 6 at 118, 125-127).  When this occurred, Appellant heard something hit his car.  (R.R. Vol. 6 at 120).  He testified he thought there had been an accident, and stopped where they were with the intention of checking the car for any damage

2

that could impact his ability to drive across the upcoming bridge.[1]  (R.R.Vol. 6 at 120-121 & 123 & 129).  If there was damage, he wanted to get Complainant's insurance information and take pictures.  (R.R. Vol. 6 at 125).  Witness accounts differ greatly about what occurred next.

Complainant testified that after Appellant got out they cursed at one another, and that when he reached for his cell phone Appellant pulled out a gun.  (R.R. Vol. 5 at 27-28).  He stated that when he stopped reaching for the phone Appellant put the gun back in its holster.  (R.R. Vol. 5 at 27-28).  A witness from another car testified she saw Appellant lift his shirt and put his hand over a gun, but that he did not take the gun out of its holster.  (R.R. Vol. 5 at 80-81).

Appellant testified that after another car slowed to let him out he had walked around the back of his car, glanced briefly at the right side, and seeing nothing major, intended to leave.  (R.R. Vol. 6 at 124-125 & 129).  He denied yelling at Complainant, who he claimed was screaming at him.  (R.R. Vol. 6 at 128).  Appellant testified that the only thing he ever said to Complainant was "If you hit my car, you ain't leaving."  (R.R. Vol. 6 at 128).  Appellant stated that when he was about to return to his car after seeing that his tire was up and everything looked okay, Complainant "backed up very violently" and then came "flying

---

[1] Appellant stated it was illegal to drive onto a bridge with a car that might not make it across. (R.R. Vol. 6 at 120).  He wanted to safeguard the commercial driver's license he had, and was concerned he could get a ticket if he got a flat on the bridge.  (R.R. Vol. 6 at 120 & 122-123).

forward," driving directly at him, refusing to stop when he motioned for him to do so. (R.R. Vol. 6 at 129 & 130-132). Appellant testified that he feared Complainant was going to run him over and possibly hit his car and injure his wife who was inside. (R.R. Vol. 6 at 131-132). He recounted that he tightened his shirt, but did not raise it, and put his hand over his weapon.[2] (R.R. Vol. 6 at 132 & 135). When Complainant realized Appellant had a gun, he put on his brakes. (R.R. Vol. 6 at 138). Appellant testified that he took his hand off the gun and watched Complainant while backing up to get in his car. (R.R. Vol. 6 at 142).

There was also conflicting testimony about events that arose after the parties left the scene, but it is the above-described events that formed the basis of the charge against Appellant, who was arrested and eventually charged with Disorderly Conduct under P.C. §42.01(a)(8).

## SUMMARY OF ARGUMENT

The trial court erred in denying Appellant's request that the jury be instructed on the Necessity defense under P.C. 9.22. The defense was raised by the evidence and Appellant satisfied the Confession and Avoidance Doctrine. Appellant suffered "some harm" from the court's error.

The trial court also erred in denying Appellant's request that the jury be instructed on Self-defense under P.C. §9.31. The defense was raised by the

---

[2] It was not contested at trial that Appellant was licensed to carry a handgun.

4

evidence and Appellant satisfied the Confession and Avoidance Doctrine.

Appellant suffered "some harm" from the court's error.

<center>ARGUMENT AND AUTHORITIES</center>

<center>POINT OF ERROR NO. ONE</center>

THE TRIAL COURT ERRED IN REFUSING TO INCLUDE AN INSTRUCTION ON THE NECESSITY DEFENSE UNDER PENAL CODE §9.22 IN THE JURY CHARGE. (R.R. VOL. 6 AT 197 & C.R. AT 80-84).

<center>POINT OF ERROR NO. TWO</center>

THE TRIAL COURT ERRED IN REFUSING TO INCUDE AN INSTRUCTION ON SELF-DEFENSE UNDER PENAL CODE §9.31 IN THE JURY CHARGE. (R.R. VOL. 6 AT 195-196 & C.R. AT 80-84).

<center>I.</center>

**There is certain law and testimony applicable to both Points of Error as follows:**

<center>A.</center>

<center>**Confession and Avoidance Doctrine**</center>

It is a defense to prosecution that the conduct[3] in question is justified under Chapter Nine of the Penal Code. P.C. §9.02. To be entitled to assert certain defenses, such as Necessity and Self-defense, the accused must admit to conduct that would violate the statute under which he is charged, and then claim the defense to justify his otherwise criminal conduct. Juarez v. State, 308 S.W.3d 398, 399 (Tex. Crim. App. 2010) and VanBrackle v. State, 179 S.W.3d 708, 715 (Tex. App. –Austin 2005). See P.C. §§9.22 & 9.31. This is referred to as the Confession and Avoidance Doctrine. Juarez v. State, 308 S.W.3d at 399. To satisfy the requirement that the defendant admit to conduct under the doctrine, it is sufficient that the defendant point to defensive evidence, originating in his own statements, such that a trier of fact could reasonably infer that each element of the offense has been satisfied. Cornet v. State, 359 S.W.3d 217, 226 (Tex. Crim. App. 2012).

If the accused wholly and consistently denies the offense by, for example, claiming alibi, he has not confessed to any conduct that needs justifying and a statutory justification defense will be unavailable. VanBrackle v. State, 179 S.W.3d at 715. However, where the testimony of the accused is inconsistent or contradictory, the doctrine will be satisfied so long as he gives some testimony confessing to conduct that shows commission of all elements of the charged crime. Id. (self-defense) and Juarez v. State, 308 S.W.3d at 405. (necessity defense). See

---

[3] "Conduct" means an act or omission and its accompanying mental state. P.C. §1.07(a)(10).

6

also <u>Villa v. State</u>, 370 S.W.3d 787, 795 (Tex. App. –Eastland 2012) (medical care defense). Likewise, where a necessary element of the offense can be reasonably inferred from the defendant's testimony, he will not be denied a defensive instruction. See <u>Juarez v. State</u>, 308 S.W.3d at 406 and <u>Cornet v. State</u>, 359 S.W.3d at 226-227 (Tex. Crim. App. 2012). Finally, where a defendant denies committing an element of the charged crime, but testifies to conduct that could be construed as commission of the element in the legal sense, he has "essentially admitted" to it under the Doctrine of Confession and Avoidance. <u>Cornet v. State</u>, 359 S.W.3d at 226-228 (defendant denied element of penetration in aggravated sexual assault case, but admitted to conduct that could satisfy legal definition of penetration).

<center>B.</center>

**<center>Appellant Satisfied the Confession</center>**

**<center>And Avoidance Doctrine</center>**

A person commits the offense of Disorderly Conduct under P.C. §42.01 if he intentionally or knowingly displays a firearm or other deadly weapon in a public place in a manner calculated to alarm. P.C. §42.01(a)(8).

Appellant's testimony reflected that he acted knowingly or intentionally. (R.R. Vol. 6 at 135 & 141). He testified to being on a public roadway, which is a "public place" under Penal Code §1.07(a)(40). (R.R. Vol. 6 at 118-120) He

<center>7</center>

admitted that his conduct involved a firearm. (R.R. Vol. 6 at 132-133). Appellant testified to facts showing he acted in a manner calculated to alarm. Though the Penal Code contains no definitions of "manner," "calculated", or "alarm", Black's Law Dictionary defines "manner", in part, as a way, mode, or method of doing anything. Black's Law Dictionary – Abridged (6th ed. 1991). It gives definitions of "calculated" that include contrivance to accomplish a purpose or likely to produce a certain effect. Id. Webster's dictionary defines "alarm" in part, as a signal giving notice of danger, and as fear resulting from a sudden sense of danger. Webster's Third International Dictionary of the English Language at p. 38 (1961) (unabridged edition). According to Appellant, during his encounter with Complainant, he tightened his shirt, put his hand over his weapon and got in a position where he could quickly remove the weapon from its holster, in order to show the complainant he could defend himself. (R.R. Vol. 6 at 132, 135-137 & 141). A jury could infer from this testimony that Appellant acted in a manner calculated to alarm.

Appellant denied during his testimony that he displayed his weapon. (R.R. Vol. 6 at 141). He equated the legal requirement of display with openly showing it to others or taking it out of its holster. (See R.R. Vol. 6 at 141). At one point he testified that "About all you could – if you want to call it display… it's less than

8

half inch of barrel and maybe a piece of holster, so that would be display. It don't even meet the criteria of display in the law." (R.R. Vol. 6 at 141).

The Court of Criminal Appeals has held that in interpreting a statute courts focus on its literal text. Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991) and Cornet v. State, 359 S.W.3d 217, 221 (Tex. Crim. App. 2012). If the text has a nonambiguous meaning on its face, courts will adopt the statute's plain meaning unless such an interpretation would lead to "absurd consequences that the Legislature could not possibly have intended." Boykin v. State, 818 S.W.2d at 785 (emphasis in original). The meaning of the word "displays" is not plain on the face of P.C.§42.01(a)(8). Unlike many other elements of the offense, the Legislature chose not to give it a statutory definition. See P.C. §§1.07(a)(17), (38) & (40) and 6.03(a) & (b) and 46.01(3). The trial court, like Appellant, interpreted the element of display in P.C. §42.01(a)(8) as requiring a gun to be pulled from its holster. (R.R. Vol. 6 at 196 & 198). The court denied Appellant's requests for defensive instructions in the charge, finding he had not admitted to the element of display based on his testimony that he never removed his weapon from its holster. (R.R. Vol. 6 at 195-198).

When there is an ambiguity or absurdity in the language of a statute courts may consult extra-textual sources in determining legislative intent. Cornet v. State, 359 S.W.3d at 221. Courts resort to these sources only insofar as they do not "add

9

or subtract from [the] statute."  Id., citing <u>Boykin v. State</u>, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).  The opinion in <u>Cornet</u> pointed out that the Court often turned to dictionaries as an aid in discerning what the Legislature intended in adopting particular language.  <u>Cornet v. State</u>, 359 S.W.3d at 221-222.  In consulting dictionaries, courts look to the alternative definitions the Legislature most likely had in mind, taking into account the context of the word, subsection of the statute, and overall statutory scheme in which the word appears.  Id. at 222.

Webster's dictionary defines the verb "display", in part, as to exhibit to the sight <u>or</u> mind, and to give evidence of.[4]  Webster's Third International Dictionary of the English Language (1961)(unabridged).  Among the definitions of "display" given in the American Heritage Dictionary of the English Language are: to give evidence of; manifest; to express by gestures or bodily posture.  American Heritage Dictionary of the English Language. (3d ed. 1992).  Black's Law Dictionary defines "display", in part, as an opening or unfolding, exhibition <u>or</u> manifestation.[5] Black's Law Dictionary (6th ed. 1991)(abridged ed.).  Webster's has defined "manifestation", in part, as a demonstration of the existence or presence of an object.  Webster's II New College Dictionary (1999).  A person could, therefore, display a handgun by manifesting or giving evidence of its presence through gestures or bodily posture even if the gun is not in plain sight.  If the Legislature

_____

[4] Emphasis mine.
[5] Emphasis mine.

10

had meant to limit the term "displays" in §42.01(a)(8) to an open exhibition, it could have easily said so. See Cornet, 359 S.W.3d at 222. As Cornet put it, "when the Legislature desires to convey a certain level of specificity within a statutory provision, it knows how to do it." Id., citing Long v. State, 931 S.W.2d 285, 290 (Tex. Crim. App. 1996) ("[Had] the legislature intended to apply a reasonable person standard, they easily could have specified one, or a clear synonym.") and Hatch v. State, 958 S.W.2d 813, 816 (Tex. Crim. App. 1997)("chapter 62 of the Government Code shows that the Legislature knew how to restrict statutes to civil cases. For example, the very next section of the Texas Government Code, Section 62.202, is restricted to 'a civil case.'").

In 2013, the Legislature did explicitly restrict the meaning of the element "displays" in Penal Code, §46.035, which deals with offenses by persons licensed to carry handguns. P.C. §46.035(a). Subsection (a) was amended to read, "A license holder commits an offense if the license holder carries a handgun on or about the license holder's person under the authority of Subchapter H, Chapter 411, Government Code, and intentionally displays the handgun in plain view of another person in a public place." In 2013, the Legislature also made amendments to P.C. §42.01, but the language in (a)(8) remained the same. It did not restrict the element of "displays" to those in plain view of another person, as it did in §46.035. This shows a collective intent on the part of the legislators who amended the

statutes that the term "displays" in §42.01(a)(8) be interpreted broadly to better protect the public peace and tranquility. See Boykin v. State, 818 S.W.2d at 785. ("When we interpret statutes….we seek to effectuate the 'collective' intent or purpose of the legislator who enacted the legislation."). Interpreting §42.01(a)(8) as requiring a display to be in plain view would impermissibly add to the statute. See Cornet v. State, 359 S.W.3d at 222.

The statutorily undefined term "displays" as used in §42.01(a)(8) should be interpreted broadly to effectuate legislative intent. This Court should hold that manifesting the presence of a gun and/or making a fraction of the gun visible can satisfy the element of display. Adopting the trial court's restrictive definition that requires a gun to be pulled before the display element is satisfied would be to encourage unnecessarily risky behavior that could lead to tragedy before the State could secure a simple misdemeanor conviction under §42.01(a)(8).

In conclusion, Appellant satisfied the Confession and Avoidance Doctrine. Though Appellant's own restrictive lay interpretation of the term display led him to testify that he had not displayed his weapon, he also gave testimony admitting to conduct that could meet both lay and legal definitions of display as the term is used in §42.01(a)(8). Therefore, he did not, strictly speaking, deny display "in the legal sense of the word." See Cornet v. State, 359 S.W.3d at 228 and Villa v. State, 417 S.W.3d 455, 458 (Tex. Crim. App. 2013) (defendant's testimony regarding

conduct amounting to "penetration" within the meaning of Texas law was sufficient to satisfy the Confession and Avoidance Doctrine even though he denied penetration as he understood it). Appellant testified to clearly manifesting the presence of his gun to the complainant by his actions, and agreed that it would be obvious just from his position that he had a gun on his hip. (R.R. Vol. 6 at 135-136). Additionally, Appellant admitted that a small portion of the gun barrel and possibly a piece of holster would have been visible during the encounter. (R.R. Vol. 6 at 141). This Court should hold that a rational jury could infer that Appellant "essentially admitted" to all elements of the charged offense. See Cornet v. State, 359 S.W.3d at 226 & 228.

<div align="center">C.</div>

<div align="center">**The Right to Defensive Instructions**</div>

Once the confession and avoidance doctrine has been satisfied, a defendant has the right to jury instructions on every claimed defensive theory raised by the evidence. Granger v. State, 35 S.W.3d 36, 38 (Tex. Crim. App. 1999) and Bowen v. State, 162 S.W.3d 225, 229 (Tex. Crim. App. 2005). The granting of defensive instructions upon timely request guarantee the jury the opportunity to make a fully informed decision. Miller v. State, 815 S.W.3d 582, 585 (Tex. Crim. App. 1991). On appeal, the evidence will be viewed in the light most favorable to the defendant's requested submissions. Dix & Schmolesky, 43 Tex. Prac. Series:

<div align="center">13</div>

Criminal Practice and Procedure, §43:30 at p. 905 (3d ed. 2011) and <u>Bufkin v. State</u>, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006). The typical rule of appellate deference to trial court rulings does not apply. Id.

A defense is raised by the evidence if there is some evidence on each element of the defense that would support a rational inference that that element is true. <u>Shaw v. State</u>, 243 S.W.3d 647, 658 (Tex. Crim. App. 2007). It does not matter whether the evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about its credibility, which is for the jury to judge. <u>Hamel v. State</u>, 916 S.W.3d 491, 493 (Tex. Crim. App. 1996) and <u>VanBrackle v. State</u>, 179 S.W.3d 708, 712 (Tex. App. –Austin 2005). "[An] instruction concerning a defensive theory must be given if it would result in an acquittal of the charged offense, if believed, without an evaluation of the credibility of the claimed defense by the trial judge." Dix & Schmolesky, 43 Tex. Prac. Series at §43:30, p. 905, f.n. #5, citing <u>Bufkin v. State</u>, 207 S.W.3d at 782-783). A defendant's testimony is by itself sufficient to raise defensive issues requiring instructions in the jury charge. <u>Hamel v. State</u>, 916. S.W.3d at 493.

D.

**Testimony Raising the Defenses of**

**Necessity and Self-defense**

14

Some examples of Appellant's testimony raising the defenses of necessity and self-defense are as follows:

"And when I looked back up, he had leaned over in his car, and he was grabbing something… That made me worried right there. I had no idea what the guy was doing… [E]verything about him told me that something was wrong." (R.R. Vol. 6 at 131).

"[He] started charging through. He didn't care if I was in the way or anything else. I have a car that's 6,000 pounds coming directly at me. There's no room for me, the car and everything else. My wife – if he hits my car, he hits my car. But my wife is in my car." (R.R. Vol. 6 at 131).

"I'm afraid that he's going to run me over, hit my car, hit somebody else… I put my hand out to tell him to stop. He don't stop. I'm backing up, trying to get out of there… I can't step out because there's cars going by us on the left." (R.R. Vol. 6 at 132).

"The guy is driving at me with a car. He's got 6,000 pounds. I'm 242 right now… let's call it 250 horsepower against my broken body. That's a battle I wouldn't want to fight. (R.R. Vol. 6 at 137). [T]here was no room for me – there was not enough room for his car. I'm the only thing in the area. And he's coming at you. I mean, enormous." (R.R. Vol. 6 at 137).

"So I wanted to let him know… I have the ability to defend myself." (R.R. Vol. 6 at 137). "I tightened my shirt up, was the first thing I did." (R.R. Vol. 6 at 135). "I was controlling my shirt. I had a hold of the edge, and I was pulling it back tight so when I draw it… I could get everything out of the way." (R.R. Vol. 6 at 141). "Then I… put my hand over my weapon." (R.R. Vol. 6 at 132).

"[W]hen he seen I had a weapon, the front of his car went down, which told me, one, he's off the gas and he's putting on the brakes. The man put his hands up." (R.R. Vol. 6 at 138). "I achieved what I wanted done. I did not want him to run me over… I applied the force that was deemed necessary to, one, keep him from hitting me, keep him from hitting my wife and car…" (R.R. Vol. 6 at 138).

## II.

## DISCUSSION SPECIFIC TO POINT OF ERROR NO. ONE - FAILURE TO INSTRUCT ON NECESSITY DEFENSE

### A.

**Error**

Appellant requested that the jury be instructed on the law of necessity under Penal Code §9.22. (R.R. Vol. 6 at 197). The necessity defense under P.C. §9.22 is a justification for engaging in conduct that otherwise would result in criminal liability. Dix & Schmolesky, 43 Tex. Prac. Series: Criminal Practice and Procedure, §43:27, p. 919 (3rd ed. 2011). There are three subsections setting out

16

the elements of the defense. See P.C. §9.22(1), (2) & (3). Subsection (1) requires a defendant to first submit evidence of a specific imminent harm. Stefanoff v. State, 78 S.W.3d 496, 500 (Tex. App. –Austin 2002). Evidence of a generalized fear of harm will not suffice. Brazelton v. State, 947 S.W.2d 644, 648 (Tex. App. –Ft. Worth 1997). "Harm" means anything reasonably regarded as loss, disadvantage, or injury, including harm to another person in whose welfare the person affected is interested. P.C. §1.07(a)(25). "Imminent" means something that is immediate, something that is going to happen now. Stefanoff v. State, 78 S.W.3d at 501. When Complainant's vehicle came flying forward and was coming directly at Appellant, who had no room to move out of the way, Appellant was in imminent danger of being hit by the vehicle and suffering death or serious bodily injury. Also, Appellant's wife was in imminent danger of being injured if Complainant hit their car.

Subsection (1) further requires that after bringing forth evidence of a specific imminent harm, a defendant must adduce facts that indicate a reasonable belief that violation of the provisions of a criminal statute was immediately necessary to avoid the harm. See P.C. §9.22(1). A reasonable belief means "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." P.C. §1.07(a)(42). Reasonableness is judged from the defendant's viewpoint at the time. Fitzgerald v. State, 782 S.W.2d 876, 885 (Tex. Crim. App. 1990). Whether

17

a defendant's beliefs are reasonable is a fact question for the jury to decide, not a preliminary question for the court to evaluate in determining whether a defense is raised. See Dix & Schmolesky, 43 Tex. Prac. Series at 43:30 at 905, f.n. #5[4].[6]

Another fact question for the jury under P.C. §9.22 is whether the desirability and urgency of avoiding the imminent harm clearly outweighs, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct of the accused. P.C. §9.22(2) and Dix & Schmolesky, 43 Tex. Prac. Series at §43:37 at 919. The defense of necessity "exonerates a person who commits proscribed conduct in order to prevent an even greater harm." Pennington v. State, 54 S.W.2d 852, 856 (Tex. App. –Ft. Worth 2001). Under the circumstances, as described in Appellant's testimony, it was both desirable and urgent to avoid the imminent harm of his being killed or seriously injured, and of his wife being injured if Complainant struck the small car in which she was a passenger. A rational juror could find that the desirability and urgency of avoiding that harm clearly outweighed, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing

---

[6] It is only when undisputed facts demonstrate a complete absence of evidence of an imminent harm, or immediate necessity to avoid that harm that a defendant's belief may appropriately be deemed unreasonable as a matter of law. Brazelton v., 947 S.W.2d 644, 648-649 (Tex. App. –Ft. Worth 1997). See eg. Stefanoff v. State, 78 S.W.3d 496, 501 (Tex. App. –Austin 2002) (defendant's considered decision to cultivate 15 marijuana plants for "medicinal" use because it could be necessary to avoid the symptoms of his illness failed to raise the necessity defense as a matter of law).

Appellant's commission of the Class B misdemeanor of disorderly conduct, particularly since, according to Appellant, he never brandished the gun at Complainant.  See P.C. §42.01(a)(8) & (d). [7]

Determining whether §9.22 (3) will operate to exclude the necessity defense even where the requirements in (1) & (2) have been met, is a question of law.  Dix & Schmolesky, 43 Tex. Prac. Series at §43:37 p. 919.  In deciding this issue a court must determine whether "a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear."  P.C.§9.22 (3).  The plain language codifying the necessity defense evinces a legislative intent that the defense apply to all offenses unless the Legislature has specifically excluded it from them.  Bowen v. State, 162 S.W.3d 226, 229 (Tex. Crim. App. 2005).  To determine whether a legislative purpose exists to exclude the necessity defense as a justification to the criminal conduct in a particular case, courts focus on the statutory language of the offense charged.  Id.  Where no legislative purpose to exclude the defense plainly appears in the text of that statute -- here §42.01 -- the necessity defense will be available.  Id.  The text of §42.01 does not exclude the §9.22 defense raised in Appellant's case.

---

[7] There are other statutes, under which Appellant is not charged, that seek to prevent other types of harm that can result from displaying a handgun in a particular fashion or under particular circumstances.  See eg. P.C. §22.05 (deadly conduct).

Because the justification of Necessity was raised by the evidence, the trial court erred in refusing Appellant's request that the jury be instructed on the defense. (See R.R. Vol. 6 at 197 & C.R. at 80-84).

B.

**Harm**

Article 36.14 of the Code of Criminal Procedure provides that the trial judge shall deliver a written charge to the jury, distinctly setting forth law applicable to the case. A timely requested defensive issue becomes law applicable to the case. Posey v. State, 966 S.W.2d 57, 62, f.n. #12 (Tex. Crim. App. 1998). Where a defendant objects to any error in the charge, reversal is required if he suffered "some harm." Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). The presence of any harm, regardless of degree, which results from preserved charging error, is sufficient to require a reversal of the conviction. Arline v. State, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). While the erroneous absence of an instruction on a defense that is subject to the confession and avoidance doctrine is generally harmful, an Almanza analysis must still be conducted in each case. Cornet v. State, 417 S.W.3d 446, 451 (Tex. Crim. App. 2013). Under Almanza, appellate courts must consider the jury charge as a whole, the state of the evidence, the arguments of counsel, and any other relevant information revealed by the record in assessing harm. Almanza v. State, 686 S.W.2d at 171.

20

## The Entire Jury Charge

The jury charge set out the elements of the single charged offense and instructed the jury to decide whether Appellant was guilty or not guilty. (C.R. at 89-91). It contained no justification defense instructions and, therefore, provided no avenue through which the jury could render an acquittal.[8] See Vasquez v. State 830 S.W.2d 948, 951 (Tex. Crim. App. 1992). Given that Appellant had "essentially admitted" to all elements of the offense, a guilty verdict was a forgone conclusion. See Pennington v. State, 545 S.W.3d 852, 859 (Tex. App. –Forth Worth 2001). The charge, as given, authorized a finding of guilt even if the jury believed Appellant's evidence that he acted out of necessity. See Miller v. State, 815 S.W.2d 582, 586, f.n. #4 (Tex. Crim. App. 1991).

Appellant was also denied the advantage he would have received had the jury been instructed on necessity in that an instruction on a defensive theory has the advantage of the trial court legitimating for the jury the defensive theories relied on by the accused. Dix & Schmolesky, 43 Tex. Prac. Series, Criminal Practice & Procedure (3d ed. 2011) at 908. Had it been properly instructed, the

---

[8] Even if the charge had included Appellant's requested instruction on self-defense, the error in failure to instruct on necessity would not have been harmless in this case. Necessity and self-defense are separate defenses. Bowen v. State, 162 S.W.3d 226, 229 (Tex. Crim. App. 2005). Under the record, the jury could have found Appellant's conduct was justified by necessity and/ or self-defense or neither depending on which evidence it believed. See Bowen v. State, 187 S.W.3d 744, 474 (Tex. App. –Ft. Worth 2006).

21

fact-finder would have needed only to have a reasonable doubt as to whether Appellant's actions were justified under P.C. §9.22. See P.C. §2.03(d).

## The State of the Evidence

This trial was a swearing contest. There were three eyewitnesses, including Appellant, to the encounter between Appellant and Complainant. They all differed on how Appellant handled his gun. Complainant testified that Appellant pulled the gun out of its holster. (R.R. Vol. 5 at 27-28). The driver of the vehicle behind Appellant testified he never took it out of the holster, but raised his shirt, made the gun visible, and put his hand over the gun's handle. (R.R. Vol. 5 at 76). Appellant testified that he tightened his shirt, but did not lift it, that he put his hand over the gun, and that only a very small portion of the gun barrel (less that ½ inch) and a piece of holster would have been visible. (R.R. Vol. 6 at 135 & 141). There was conflicting testimony on whether Appellant walked around his car and checked for damage, and whether he yelled at Complainant. (R.R. Vol. 5 at 27-28 & 86 & Vol. 6 at 124 & 128). Complainant denied Appellant's assertion that he was ever driving directly at him. (R.R. Vol. 5 at 56). He even denied ever driving on the shoulder of the road. (R.R. Vol. 5 at 52).

The fact that the jury, in finding Appellant guilty under §42.01(a)(8), necessarily believed he had displayed his weapon when he testified he hadn't, does not telegraph what weight and credibility it would have assigned to the defensive

22

evidence had it been properly instructed. Appellant testified to conduct the jury was entitled to regard as display even if it did not comport with Appellant's own understanding of the term. See Vernon v. State, 841 S.W.2d 407, 408-410 (Tex. Crim. App. 1992) & Cornet v. State, 359 S.W.3d 217, 227-228 (Tex. Crim. App. 2012). Furthermore, it is immaterial that Appellant testified that the visibility of a small portion of the gun barrel and a piece of holster did not meet the criteria for display under the law. The jury was instructed that it was to receive the law only from the court. (C.R. at 90). Therefore, it could have accepted Appellant's version of the facts without adopting his interpretation of the law.

## The Arguments of Counsel

This case is simpler than most. There were two competing theories about Appellant's behavior – "road rage" vs. self-defense/necessity. Both counsels for the prosecution and the defense questioned jury panelists on their own theory and each side relentlessly advanced that theory throughout trial. (R.R. Vol. 4 at 5, 36-39 & 74-78 & Vol. 5 & Vol. 6). But while the State was allowed to argue and rely on its "road rage" theory and its characterization of Appellant as a "vigilante" in closing argument, the absence from the charge of Appellant's requested defensive instructions left him suddenly without a case despite the evidence he had submitted. (R.R. Vol. 6 at 203 & 212-213). See Barron v. State, 353 S.W.3d 879, 884 (Tex. Crim. App. 2011)(defendant harmed when error in the charge

23

emphasized the State's evidence supporting its theory of the case). Defense counsel was thus reduced to arguing reasonable doubt. (R.R. Vol. 6 at 203).[9] Given that Appellant had essentially admitted to all elements of the offense, that argument was doomed to fail.

Other Relevant Information Revealed by the Record

Appellant's case was built on the notion that he had the right to immediately defend himself against the complainant. Defense counsel discussed this right with the jury panel during voir dire. (R.R. Vol. 4 at 74-78). He never suggested at any point in the trial that Appellant's actions were not entirely justified. Contrast Cornet v. State, 417 S.W.3d 446, 454-455 (Tex. Crim. App. 2013) (defense attorney who had requested instruction on medical care defense categorized defendant's examination of child for signs of sexual abuse as a "mistake" and as "inappropriate behavior"). Counsel questioned witnesses on matters relevant to the necessity defense and Appellant gave detailed testimony on his encounter with the complainant in support thereof. (R.R. Vol. 6 at 105, et seq.). The record shows that counsel's request for an instruction on the justification of necessity was not "an afterthought." Contrast Cornet v. State, 417 S.W.3d at 455. Counsel filed a written request for such an instruction the first day of trial, as well as requesting it at the charge conference. (C.R. at 80-84 & Vol 6 at 197). When a defendant's

---

[9] Defense counsel made clear that he did not wish to abandon the justification defenses, but had no choice. (R.R. Vol. 6 at 203).

24

entire case is built on the necessity to defend himself, a trial court's refusal to submit a necessity defense instruction to the jury causes harm to the accused. See Vasquez v. State, 830 S.W.2d 948, 951 (Tex. Crim. App. 1992). Because Appellant suffered "some harm" Point of Error No. One should be sustained. See Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).

## V.

## DISCUSSION SPECIFIC TO POINT OF ERROR NO. TWO - FAILURE TO INSTRUCT ON SELF-DEFENSE

## A.

**Error**

Appellant requested that an instruction on the law of self-defense be included in the jury charge. (R.R. Vol. 6 at 195-196). Under Penal Code, §9.31 a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. P.C. 9.31(a). Reasonableness is, therefore, judged from the actor's standpoint. It is not necessary for a jury to believe that the other person was actually using or attempting to use unlawful force against the defendant for the defendant's right of self-defense to exist. Hamel v. State, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996). A reasonable apprehension of danger – actual or apparent – "is all that is required before one is entitled to

25

exercise the right of self-defense against his adversary." Valentine v. State, 587 S.W.2d 399, 401 (Tex. Crim. App. 1979). See also Walters v. State, 247 S.W.3d 204, 213, f.n. #37 (Tex. Crim. App. 2007).

To be entitled to rely on self-defense under §9.31, Appellant must have used "force" during his encounter with Complainant. See P.C. §9.31. In Boget v. State, the Court considered the question of what it means to direct force "against" another. Boget v. State, 74 S.W.3d 23, 27 (Tex. Crim. App. 2002). Though Boget's analysis focused on defining a term other than "force," that analysis is nonetheless instructive in determining whether force was used in the instant case. Boget was charged with criminal mischief for breaking the windows on a truck. Boget v. State, 74 S.W.3d at 24. He claimed he had been defending himself against an attack by the driver, who he claimed hit him with her truck. Id. at . His request for a self-defense instruction was denied. Id. at 25. On appeal, the State argued that under §9.31, self-defense is available only when a defendant is charged with a crime against a person. Id. The Court of Criminal Appeals rejected this argument. Id. at 31.

As Boget stated that a court's duty when construing a statute is to effectuate the intent of the Legislature. Boget v. State, 74 S.W.3d at 30. Though a court, where possible, is to look to the text of a statute in determining legislative intent, when the language is ambiguous, extratextural factors may be considered. Id. at 27

and <u>Boykin v. State</u>, 818 S.W.2d 782, 785-786 (Tex. Crim. App. 1991). The <u>Boget</u> opinion pointed out that when the Penal Code was rewritten, the justification of self-defense was moved out of sections involving offenses such as assault and homicide, and placed in the Code's general section of justification. <u>Boget v. State</u>, 74 S.W.3d at 29. It found this fact to be the strongest argument against limiting self-defense to assaultive crimes only. Id.

Ultimately, <u>Boget</u> held that P.C. §9.31 should be interpreted in a way that encourages restraint in defensive situations. Id. at 30. Accord <u>Alonzo v. State</u>, 353 S.W.3d 778, 783 (Tex. Crim. App. 2011). Though the law recognizes that the right of self-preservation entitles a person to defend himself by taking the life of his assailant if necessary, the general rule that a person should only use such force as necessary in defending himself was "[w]ithout question" a principle Texas legislators sought to embody when enacting §9.31. <u>Boget v. State</u>, 74 S.W.3d at 30. <u>Boget</u> gives a hypothetical that demonstrates the equity of this approach. Id. at 30-31. In it, a person is about to be run down by a speeding car. Id. at 30. If she shoots the driver she would be entitled to a self-defense instruction at a murder trial. Id. at 31. If she brandishes her pistol and shoots at the car's tires and is later charged with criminal mischief, a denial of a self-defense charge because she did not use force against a person would be contrary to the purpose of the statute

because it would punish the individual who used the least force possible in self-preservation.  Id. at 31.

Though §9.31 only applies when the defendant used "force" against another, force can take different forms.  In keeping with the goal of encouraging individuals to use the least amount of force possible in defending themselves, courts should interpret "force" to include definitions of the word that are not limited to physical violence or restraint.  Black's Law Dictionary defines "force," in part, as power or violence directed against a person.  Black's Law Dictionary at 519 (Seventh ed. 2000)(abridged).  It defines "power," in part, as dominance, control or influence over another.  Id. at 953.  In the instant case, Appellant did not resort to physical violence, but used "force" by exerting dominance and gaining control over the complainant be demonstrating to him that he had a weapon and could use it in defending himself .  (R.R. Vol. 6 at 132, 135 & 137).  In response, Complainant submitted to this force by applying his brakes and putting his hands up.  (R.R. Vol. 6 at 138).  No shots were fired, but this Court should hold that force was used against another within the meaning of §9.31.

Appellant's testimony raised the issue of self-defense and he was entitled to have the jury instructed on it.  It is universally recognized that when a person is about to be run down by a car operated by a driver who refuses to stop, (as appellant testified was the case) that person has a right to immediately defend

himself in some manner. See <u>Boget v. State</u>, 74 S.W.3d 30-31 (Tex. Crim. App. 2002). As noted hereinabove, according to <u>Boget</u>, even if he shoots and kills the driver such a person will be entitled to a self-defense instruction at a subsequent murder trial. Id. The question of whether, in the instant case, Appellant was reasonable in believing that force, and the degree of force he used, was immediately necessary to defend himself against the complainants use or attempted use of unlawful force, should have been submitted to the jury. See <u>Rodriguez v. State</u>, 544 S.W.2d 382, 384 (Tex. Crim. App. 1976) ("[W]hether appellant's beliefs, fears and actions were reasonable as required by statute, were also fact issues for the jury, but the jury was also deprived of the opportunity to decide those issues…") and <u>VanBrackle v. State</u>, 179 S.W.3d 708, 713 (Tex. App. –Austin 2005) (whether a defendant's beliefs reasonable is a fact question for the jury, not a preliminary question for the trial court to evaluate in determining whether a self-defense instruction is warranted). The trial court erred in refusing Appellant's request that the jury be instructed on self-defense under P.C. §9.31.

<div align="center">B.</div>

<div align="center">

**Harm**

</div>

Article 36.14 of the Code of Criminal Procedure provides that the trial judge shall deliver a written charge to the jury, distinctly setting forth law applicable to the case. A timely requested defensive issue becomes law applicable to the case.

<div align="center">29</div>

Posey v. State, 966 S.W.2d 57, 62, f.n. #12 (Tex. Crim. App. 1998). Where a defendant objects to any error in the charge, reversal is required if he suffered "some harm." Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). The presence of any harm, regardless of degree, which results from preserved charging error, is sufficient to require a reversal of the conviction. Arline v. State, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). While the erroneous absence of an instruction on a defense that is subject to the confession and avoidance doctrine is generally harmful, an Almanza analysis must still be conducted in each case. Cornet v. State, 417 S.W.3d 446, 451 (Tex. Crim. App. 2013). Under Almanza, appellate courts must consider the jury charge as a whole, the state of the evidence, the arguments of counsel, and any other relevant information revealed by the record in assessing harm. Almanza v. State, 686 S.W.2d at 171.

## The Entire Jury Charge

The jury charge set out the elements of the single charged offense and instructed the jury to decide whether Appellant was guilty or not guilty. (C.R. at 89-91). It contained no justification defense instructions and, therefore, provided no avenue through which the jury could render an acquittal.[10] See Vasquez v. State

---

[10] Even if the charge had included Appellant's requested instruction on necessity, the error in failure to instruct on self-defense would not have been harmless in this case. Necessity and self-defense are separate defenses. Bowen v. State, 162 S.W.3d 226, 229 (Tex. Crim. App. 2005). Under the record, the jury could have found Appellant's conduct was justified by necessity and/ or self-defense or neither depending on which evidence it believed. See Bowen v. State, 187 S.W.3d 744, 474 (Tex. App. –Ft. Worth 2006).

830 S.W.2d 948, 951 (Tex. Crim. App. 1992). Given that Appellant had "essentially admitted" to all elements of the offense, a guilty verdict was a forgone conclusion. See Johnson v. State, 271 S.W.3d 359, 368 (Tex. App. –Beaumont 2008). The charge, as given, authorized a finding of guilt even if the jury believed Appellant's defensive evidence. See Miller v. State, 815 S.W.2d 582, 586, f.n. #4 (Tex. Crim. App. 1991).

Appellant was also denied the advantage he would have received had the jury been instructed on self-defense in that an instruction on a defensive theory has the advantage of the trial court legitimating for the jury the defensive theories relied on by the accused. Dix & Schmolesky, 43 Tex. Prac. Series, Criminal Practice & Procedure (3d. ed. 2011) at p. 908. Had it been properly instructed, the fact-finder would have needed only to have a reasonable doubt as to whether Appellant's actions were justified. See P.C. §2.03(d) & VanBrackle v. State, 179 S.W.3d 708, 717 (Tex. App. –Austin 2005).

<p style="text-align: center;">The State of the Evidence</p>

This trial was a swearing contest. There were three eyewitnesses, including Appellant, to the encounter between Appellant and Complainant. They all differed on how Appellant handled his gun. Complainant testified that Appellant took the gun out of its holster. (R.R. Vol. 5at 27-28). The driver of the vehicle behind Appellant testified he never took it out of the holster, but raised his shirt, made the

<p style="text-align: center;">31</p>

gun visible, and put his hand over the gun's handle. (R.R. Vol. 5 at 76-77 & 80). Appellant testified that he tightened his shirt, but did not lift it, that he put his hand over the gun, and that only a very small portion of the gun barrel (less that ½ inch) and a piece of holster would have been visible. (R.R. Vol. 6 at 135 & 141). There was conflicting testimony on whether Appellant walked around his car and checked for damage, and whether he yelled at Complainant. (R.R. Vol. 5 at 86, & Vol. 6 at 124-125). Complainant denied Appellant's assertion that he was driving directly at him as he was attempting to leave the scene. (R.R. Vol. 5 at 56). The list goes on.

The record demonstrates that the jury could have found Appellant committed all elements of the offense no matter which witness, including Appellant, it believed. What the record does not show is how the jury would have viewed his defensive evidence since it was not allowed to consider it in rendering its verdict. Appellate courts have reversed convictions to allow a jury to decide whether it believes evidence offered in support of a claimed defense. The fact that the jury, in finding Appellant guilty under §42.01(a)(8), necessarily believed he had displayed his weapon when he testified he hadn't, does not telegraph what weight and credibility it would have assigned to the defensive evidence had it been properly instructed. Appellant testified to conduct the jury was entitled to regard as display even if it did not comport with Appellant's own understanding of the

32

term, which required that he take the gun out of the holster or exhibit it in plain view.  See Vernon v. State, 841 S.W.2d 407, 408-410 (Tex. Crim. App. 1992) & Cornet v. State, 359 S.W.3d 217, 227-228 (Tex. Crim. App. 2012).  Furthermore, it is immaterial that Appellant testified that the visibility of a small portion of the gun barrel and a piece of holster did not meet the criteria for display under the law. The jury was instructed that it was to receive the law only from the court.  (C.R. at 90).  Therefore, it could have accepted Appellant's version of the facts without adopting his interpretation of the law.

## The Arguments of Counsel

This case is simpler than most.  There were two competing theories about Appellant's behavior – "road rage" vs. self-defense/necessity.  Both counsels for the prosecution and the defense questioned jury panelists on those issues and each relentlessly advanced their theory throughout trial.  (R.R. Vol. 4 at 5, 7 & 74-78). But while the State was allowed to argue and rely on its "road rage" theory and its characterization of Appellant as a "vigilante" in closing argument, the absence from the charge of Appellant's requested defensive instructions left him suddenly without a case despite the evidence he had submitted. (R.R. Vol. 6 at 203 & 212-213).  See Barron v. State, 353 S.W.3d 879, 884 (Tex. Crim. App. 2011)(defendant harmed when error in the charge emphasized the State's evidence supporting its theory of the case).  Defense counsel was thus reduced to arguing reasonable

doubt. (R.R. Vol. 6 at 203). [11] Given that Appellant had essentially admitted to all elements of the offense, that argument was doomed to fail.

Other Relevant Information Revealed by the Record

Appellant's case was built on the notion that he had the right to immediately defend himself against the complainant. Defense counsel discussed this right with the jury panel during voir dire. (R.R. Vol. 4 at 74-78). He never suggested at any point in the trial that Appellant's actions were not entirely justified. Contrast Cornet v. State, 417 S.W.3d 446, 454-455 (Tex. Crim. App. 2013) (defense attorney who had requested instruction on medical care defense categorized defendant's examination of child for signs of sexual abuse as a "mistake" and as "inappropriate behavior"). Counsel questioned witnesses on matters relevant to the necessity defense and Appellant gave detailed testimony on his encounter with the complainant in support thereof. (R.R. Vol. 6 at 105, et seq.). The record shows that counsel's request for an instruction on the justification of necessity was not "an afterthought." He filed a written request for a self-defense instruction the first day of trial, as well as requesting it at the charge conference. (C.R. at 80-84 & Vol 6 at 197). Contrast Cornet v. State, 417 S.W.3d at 455. When a defendant's entire case is built on the necessity to defend himself, a trial court's refusal to submit a self-defense instruction to the jury causes "some harm" to the accused. Johnson v.

---

[11] Defense counsel made clear that he did not wish to abandon the justification defenses, but had no choice. (R.R. Vol. 6 at 203).

State, 271 S.W.3d 359, 369 (Tex. App. –Beaumont 2008) & Guilbeau v. State, 193 S.W.3d 156, 161 (Tex. App. –Houston [1st Dist.] 2006).  Because Appellant suffered "some harm" Point of Error No. Two should be sustained.  See Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App 1984).

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Appellant requests that this Court reverse Appellant's conviction and order a new trial.

<div style="text-align: right;">

Respectfully submitted,

/s/ Connie J. Kelley
Connie J. Kelley
Attorney for Appellant
1108 Lavaca #110-221
Austin, Texas 78701
(512) 445-4504
(512) 478-2318 (fax)
warrentucker@grandecom.net
State Bar Number 11199600

</div>

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was served on Susan D. Reed, Bexar County District Attorney at Paul Elizondo Tower, 101 W. Nueva, 5th Floor, San Antonio, TX 78205 by regular mail on this 30th day of January, 2015.

<div style="text-align: right;">

/s/ Connie J. Kelley
Connie J. Kelley

</div>

## CERTIFICATE OF COMPLIANCE

This is to certify that the foregoing document is in 14 point font, with the exception of footnotes, which are in 12 point font. The word count of the foregoing document is 8,032 words, which is in compliance with T.R.A.P. Rule 9.4.

<div align="right">

/s/ Connie J. Kelley  
Connie J. Kelley

</div>