**Lydia Hernandez BOWEN, Appellant,**

v.

**The STATE of Texas, State.**

No. 2-02-239-CR.

Court of Appeals of Texas,
Fort Worth.

Feb. 23, 2006.

Bishop & Bishop, Samuel Clifford Bishop and James Stainton, Decatur, for appellant.

Greg Lowery, Thomas J. Aaberg and Margaret R. Shelton, Wise County Dist. Atty's Office, Decatur, Matthew W. Paul, State Prosecuting Atty., Austin, for appellee.

PANEL B: HOLMAN, GARDNER, and WALKER, JJ.

### OPINION ON REMAND

ANNE GARDNER, Justice.

Appellant Lydia Hernandez Bowen was tried before a jury for resisting arrest. At the close of evidence, Appellant sought an instruction on the defense of necessity, which the trial court refused. Appellant appealed from her conviction, and we affirmed the trial court's denial of the necessity instruction. *Bowen v. State*, 117 S.W.3d 291 (Tex.App.-Fort Worth 2003), *rev'd*, 162 S.W.3d 226, 230 (Tex.Crim.App. 2005). The court of criminal appeals reversed, holding that the trial court erred by failing to submit the necessity defense and remanding the case to this court for a harm analysis. *Bowen*, 162 S.W.3d at 230.

We reverse the trial court's judgment and remand for a new trial.

## Background

On January 26, 2001, Appellant was arrested for disorderly conduct and public intoxication. She was arrested in the front yard of her rural house by Deputy William D. Hamilton. Appellant and Deputy Hamilton gave conflicting testimony concerning the arrest.[1]

Deputy Hamilton testified he was dispatched to a disturbance at Appellant's residence and was warned by the dispatcher that there was a possibility of weapons on the scene. The police chief, state troopers, and other deputies were at the scene when he arrived, as were about fifteen to twenty adults and several juveniles, most of whom were Appellant's family members who lived nearby.

Deputy Hamilton described Appellant as becoming very loud and belligerent about youths racing on the private road by the property. Then she became upset with him. Although he warned Appellant to watch her language, she continued shouting and using abusive language. Deputy Hamilton could also smell such a strong odor of alcohol on Appellant's breath that he performed the horizontal gaze nystagmus sobriety field test on her. Deputy Hamilton then told Appellant and her husband that he was arresting both of them for disorderly conduct. As he grabbed her right hand to place the cuffs on her, she tried to pull away, stating that she was not going to jail and was going back to her house. Deputy Hamilton acknowledged that Appellant did not use any force against him before he took her to the ground. Because he had been told there were weapons at the scene, Deputy Hamilton said that he was concerned that Appellant could retrieve a weapon or barricade herself in the house. Deputy Hamilton took Appellant to the ground by kicking her feet out from underneath her as she tried to run toward the house. With the assistance of a civilian officer, Deputy Hamilton knelt beside Appellant and, with his knee in her back, secured the handcuffs behind her back. He explained to her what was going on and gave her time to calm down. He told her that she was in custody and was going with him. When she calmed down, he helped her to her knees and then to her feet, and walked her to the patrol car, where she was ordered to sit in the rear passenger seat. Deputy Hamilton testified that Appellant then again became belligerent, cursing and screaming, and that she kicked him in the shin.

Appellant testified that Deputy Hamilton was talking to her husband when she came out of the house. She approached them and asked the officer what was going on. She had had three wine coolers that evening and did not feel she was intoxicated. No one asked her to perform an HGN test. Appellant admitted that Deputy Hamilton told her that she was being arrested, but denied that he explained why. He grabbed her by the wrist, turned her around, twisted her arm up behind her back, and placed the handcuffs on one of her wrists. She took "a step" back toward her home, struggled to turn, and asked why she was being arrested. Deputy Hamilton then kicked her feet out from underneath her, and she landed on the ground. Deputy Hamilton landed directly on top of her and then used his knees to pin her to the ground. Two other officers assisted Deputy Hamilton, forcing Appellant's face into the dirt, such that she had

---

1. Testimony from law enforcement witnesses corroborated Deputy Hamilton's version of events, and Appellant's family members corroborated her version of events.

difficulty breathing. Appellant said that she struggled for air, screamed for help, and was hurting.

According to Appellant, after the officers restrained her in handcuffs, they lifted her directly from the ground to her feet, using only the handcuffs and her forearms. Appellant thought that she felt her arm pop out of its socket. She then began kicking and struggling to regain her balance and to stop the officers from hurting her and, in the process, kicked Deputy Hamilton. Appellant stated that the kicking occurred when Deputy Hamilton was lifting her up, not after they had walked her to the car.

## Standard of Review

Properly preserved charge error requires reversal if the error was "calculated to injure the rights of [the] defendant," which means no more than that there must be *some* harm to the accused from the error. TEX.CODE CRIM. PROC. ANN. art. 36.19 (Vernon 1981); *see also Abdnor v. State,* 871 S.W.2d 726, 731 (Tex.Crim. App.1994); *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (op. on reh'g). In other words, a properly preserved error will call for reversal as long as the error is not harmless. *Almanza,* 686 S.W.2d at 171. In making this determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.; see also Ovalle v. State,* 13 S.W.3d 774, 786 (Tex.Crim.App.2000).

## Discussion

Appellant contends that she suffered harm because the jury did not have the opportunity to consider the defense of

necessity. The State argues that the evidence of necessity in this case is subsumed by the evidence of self-defense in the context of resisting arrest. The trial court instructed the jury on self-defense; therefore, argues the State, Appellant suffered no harm. Thus, the key issue is whether the evidence of necessity and self-defense overlaps to such an extent that the self-defense instruction precluded harm from the trial court's failure to instruct the jury on necessity.

To resolve the harm issue, we look first to the relevant sections of the penal code. Section 9.22 defines the defense of necessity:

Conduct is justified if:

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

TEX. PENAL CODE ANN. § 9.22 (Vernon 2003). Likewise, section 9.31(c) defines self-defense in the context of resisting arrest:

The use of force to resist an arrest or search is justified:

(1) if, before the actor offers any resistance, the peace officer (or person acting at his direction) uses or attempts to use greater force than necessary to make the arrest or search; and

(2) when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's (or other per-

son's) use or attempted use of greater force than necessary.

TEX. PENAL CODE ANN. § 9.31(c) (Vernon 2003).

Our review of the entire record reveals that the jury could have found that Appellant acted in self-defense if it believed that Deputy Hamilton used greater force than necessary to arrest Appellant *before* Appellant offered any resistance. But the jury also could have believed that Deputy Hamilton used excessive force *after* Appellant offered resistance—for example, the jury could have believed that Appellant first offered resistance by attempting to return to her house, as Deputy Hamilton testified, before Deputy Hamilton used excessive force, as Appellant testified. The latter scenario would preclude a finding of self-defense, but not a finding of necessity.

Stated another way, the jury in this case was free to interpret the evidence in such a way that would support a finding of self-defense, or a finding of necessity but not self-defense, or a finding of neither self-defense nor necessity. The trial court's failure to instruct the jury on necessity precluded the middle interpretation. Appellant was therefore harmed by the trial court's failure to instruct the jury on necessity.

## Conclusion

Having found harm in the trial court's failure to instruct the jury on the defense of necessity, we reverse the trial court's judgment and remand the case to the trial court for a new trial.