**William ROGERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**NUMBER 13–15–00600–CR, NUMBER 13–15–00601–CR**

Court of Appeals of Texas, Corpus Christi-Edinburg.

Delivered and filed March 9, 2017

Discretionary Review Refused August 23, 2017

Discretionary Review Granted August 23, 2017

Rehearing Overruled April 19, 2017

---

Luis A. Martinez, Attorney at Law, Victoria, TX, for Appellant.

Michael A. Sheppard, District Attorney, Cuero, TX, for Appellee.

Before Justices Contreras, Benavides, and Longoria

## OPINION

Opinion by Justice Longoria

Appellant William Rogers challenges his convictions for burglary of a habitation, a first-degree felony, and aggravated assault, a second-degree felony. *See* TEX. PE-NAL CODE ANN. §§ 30.02, 22.02(a)(2) (West, Westlaw through 2015 R.S.). We affirm in part and vacate in part.

### I. BACKGROUND

On the afternoon of February 14, 2013, appellant left work and drove to the house of Sandra and David Watson. Sandra and appellant had been having an affair for at least a year prior to that date. It is undisputed that David returned to the house while appellant was still present and a fight ensued in which appellant shot David in the genitals with a pistol he obtained from inside the house. The State indicted appellant for one count of burglary of a habitation (Count 1), alleging that appellant committed the felony of aggravated assault against David while in his residence. *See id.* § 30.02(a)(3). Under a separate cause number, the State indicted appellant for aggravated assault of David with a deadly weapon (Count 2). *See id.* § 20.02(a)(2). The case was tried to a jury.

Appellant and David testified to very different versions of their altercation. Appellant's version is that Sandra asked him to go to the house that day to feed her cats. David returned to the house, and appellant hid in a closet intending to wait until he had a chance to leave without being seen. David found appellant there and backed him into a large safe located at the back of the closet while brandishing a knife. Even though appellant admittedly had his own firearm with him, he grabbed a gun that was resting on top of the safe and extended it towards David. Appellant testified that David grabbed the gun, and appellant simultaneously fired.

David, in contrast, testified that he returned from work and went into the closet to change clothes without knowing anyone was there. Appellant then "stood up, called me a MF, and a bullet went off, a gun went off." The two men then grappled with each other throughout several rooms in the house but disagreed substantially about the precise sequence of events after the shooting. They also disagreed on how the struggle ended. According to David, his gun jammed and he fled across the front lawn to a neighbor's house as appellant fired at him from the front porch. According to appellant, David hid behind some trees in the front yard and shot at appellant as he fled back to his truck, which was parked down the street.

Following the close of evidence, appellant submitted requested jury charges on the theories of self-defense and necessity. *See* TEX. PENAL CODE ANN. §§ 9.31, 9.32, 9.22 (West, Westlaw through 2015 R.S.). The trial court refused to give either charge. The jury returned a verdict of guilty on both counts. After a punishment trial, the jury imposed concurrent sentences of imprisonment for forty years on Count 1 and twenty years on Count 2. Appellant argues two issues on appeal: (1) the trial court erred by refusing to instruct the jury on self-defense and necessity, and (2) punishing him on both counts violates the constitutional protection against double jeopardy.

### II. REQUESTED JURY INSTRUCTIONS

Appellant argues in his first issue that the trial court erred when it refused his requested jury instructions on self-defense and necessity.

### A. Standard of Review

Appellate courts review a claim of charge error through a two-step pro-

cess; first determining whether error exists, and then considering whether the error was harmful. *Phillips v. State*, 463 S.W.3d 59, 64–65 (Tex. Crim. App. 2015). Preservation of error does not become an issue until the second step of the analysis, where it dictates the degree of harm necessary to warrant reversal. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

When, as here, the defendant preserves the alleged error, we must reverse if the error caused him to suffer "some harm." *Id.* Reversal is required "as long as the error is not harmless." *Id.* (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)). Nevertheless, the record must reveal that the defendant suffered "some actual, rather than merely theoretical, harm from the error." *Elizondo v. State*, 487 S.W.3d 185, 205 (Tex. Crim. App. 2016) (internal quotation marks omitted). Courts evaluate harm by looking at the entire jury charge, the state of the evidence, the arguments of counsel, and any other relevant information in the record. *Reeves*, 420 S.W.3d at 816.

### B. Analysis

Assuming that the trial court erred in refusing to give the instructions on self-defense and necessity, we conclude that the error, if any, was harmless. We evaluate the record to determine if the record shows "some harm" because appellant preserved error by submitting proposed instructions on both issues. *See id.*

Regarding the jury charge as a whole, the court submitted separate charges to the jury for each count. Both charges instructed the jury to find appellant guilty of the indicted offenses if it believed the State proved their essential elements beyond a reasonable doubt. Neither charge contained a defense of any sort.

Regarding the arguments of counsel, appellant's counsel did not rely on either self-defense or justification as part of appellant's defense. Counsel informed the jury in his opening statement of the identity of each defense witness and stated in general terms what their testimony would include. In his closing statement, counsel highlighted the inconsistencies between the two versions of events, but again did not argue that appellant acted in self-defense or that his actions were necessary to avoid a greater harm. That appellant's counsel did not rely on either defense suggests that the error in refusing to charge the jury was harmless. *See Cornet v. State*, 417 S.W.3d 446, 454–55 (Tex. Crim. App. 2013).

We examine the contested issues and the weight of the probative evidence under the third factor. *See id.* at 453. Appellant testified that he shot David after David backed him into a closet while brandishing a knife. By this testimony, appellant essentially admitted to the offense of aggravated assault. *See* Tex. Penal Code Ann. § 22.02(a). Thus, the contested issue was not whether appellant committed aggravated assault but whether he had a justification to excuse the shooting. Appellant's description of the circumstances surrounding the shooting is arguably evidence that raises the defenses of self-defense or necessity, but neither appellant nor his counsel relied on either defense as a justification before the jury.

Furthermore, the weight of the other probative evidence was against appellant. The State introduced significant physical evidence recovered from David's house such as shell casings, firearms, spent rounds recovered from the walls, a knife with blood on it, and photographs of blood stains throughout the house. Some of the evidence could support either version of events, but some of it supported David's version. To take one example, appellant

argued that David left the house before him and shot at him from behind a tree in his front yard, but there was no evidence of any spent shell casings from that area. By contrast, three shell casings were recovered from near the door on the front porch, supporting David's statement that he ran across the yard while appellant stood on the front porch and fired at him. Furthermore, there was a lack of blood in areas where appellant stated he and David moved during the struggle even though David was bleeding profusely, supporting the truth of David's version of events. The weight of the evidence for appellant's guilt, even if not overwhelming, suggests that the jury would not have accepted claims of self-defense or necessity. *See Gonzales v. State*, 474 S.W.3d 345, 353 (Tex. App.–Houston [14th Dist.] 2015, pet ref'd).

Other relevant information supports that the jury felt appellant bore substantial blame for the events inside David's house. The punishment range for Count 1, a first-degree felony, was imprisonment for anywhere between five and ninety-nine years or life. *See* Tex. Penal Code Ann. § 12.32(a) (West, Westlaw through 2015 R.S.). The punishment range for Count 2, a second-degree felony, was imprisonment for anywhere from two to twenty years. *See id.* § 12.33(a) (West, Westlaw through 2015 R.S.). The jury sentenced appellant to forty years on Count 1 and twenty years on Count 2. Even though the jury rejected the State's request to impose a life sentence on Count 1, the jury's decision to impose a sentence substantially above the minimum for Count 1 and which was the maximum available for Count 2 "indicates that the jury believed that appellant was significantly blameworthy." *See Gonzales*, 474 S.W.3d at 353.

■ The absence of an instruction on a confession-and-avoidance defense such as a self-defense or justification "is generally harmful because its omission leaves the jury without a vehicle by which to acquit a defendant who has admitted to all the elements of the offense." *Cornet*, 417 S.W.3d at 451. Given the circumstances of this case, we conclude that general rule is not applicable here. *See id.* ("Although generalities may be instructive, they cannot substitute for the record-specific analysis for harm that must be conducted in each case."). Appellant admitted to committing aggravated assault in his testimony, but did not expressly or implicitly rely on self-defense or justification as part of his case. That appellant did not rely on either defense strongly suggests that the error was harmless.[1] *See id.* at 455 (hold-

---

1. We note that appellant's counsel apparently wanted to raise the issues of self-defense and necessity. At the beginning of trial, the court granted the State's motion in limine which provided, in relevant part, that appellant could not discuss any of the laws relating to "justification, necessity, apparent danger, self-defense, deadly force in defense of person, mutual combat, or consent to use of force" without first receiving the court's permission. Appellant's counsel asked the trial court to revisit its ruling just before voir dire because the evidence might raise self-defense or necessity. The trial court replied: "No. You cannot talk to the jury about anything that would constitute a self-defense or justification for the actions of your client."

Later, during counsel's direct examination of appellant, counsel asked about his state of mind after shooting David: "And you just told the jury what happened then, knife and shot going off. What is your brain telling you?" Before appellant could answer, the trial court summoned counsel to the bench for an unrecorded conference. Following a recess, the trial court told counsel on the record but outside the presence of the jury that appellant could not claim self-defense because he had provoked the difficulty by going to the Watson home knowing that Sandra was not there but that David could return. The court instructed counsel that "you may not venture off into anything that alludes to or invades the province of self-defense." While appellant's coun-

ing that error in refusing to give a defensive instruction was harmless in part because appellant did not invoke the defense in voir dire or in his opening statement). The state of the evidence was also against the jury accepting either defense. *See Gonzales*, 474 S.W.3d at 353. Finally, the sentences imposed by the jury indicates that it considered appellant to be significantly blameworthy. *See id.* Based on this record, we conclude that the error in refusing the charges, if any, was harmless. We overrule appellant's first issue.

## III. Double Jeopardy

Appellant argues in his second issue that punishing him on both counts violates the constitutional protection against double jeopardy. *See* U.S. Const. amend. V.

### A. Applicable Law

■■■■■■ There are three distinct types of double jeopardy claims: (1) a second prosecution for the same offense after an acquittal; (2) a second prosecution for the same offense after a conviction; and (3) multiple punishments for the same offense. *Bigon v. State*, 252 S.W.3d 360, 369 (Tex. Crim. App. 2008). A multiple punishments claim can arise in two contexts. Relevant here is the lesser-included offense context, where the same conduct is punished twice, once for the basic conduct and a second time for the same conduct plus more. *Id.* at 370.

■■■■■■ Courts begin a multiple-punishments analysis by determining whether the two offenses are the same under the *Blockburger* test. *Id.* (citing *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)). "Under the *Blockburger* test, two offenses are not the same if one requires proof of an element that the other does not." *Id.* The Texas Court of Criminal Appeals's cognate-pleadings approach allows double-jeopardy claims even when offenses are not the same under a strict application of the *Blockburger* test if the pleadings alleged the same "facts required." *Shelby v. State*, 448 S.W.3d 431, 436 (Tex. Crim. App. 2014).

■■■■■■ Appellant did not raise double jeopardy at trial. Because of the fundamental nature of double-jeopardy protections, a double-jeopardy claim may be raised for the first time on appeal if: (1) the undisputed facts show that the double-jeopardy violation is clearly apparent on the face of the record; and (2) enforcement of the usual rules of procedural default serves no legitimate state interest. *Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006). A double-jeopardy claim is clearly apparent on the face of the record "if resolution of the claim does not require further proceedings for the purpose of introducing additional evidence in support of the double-jeopardy claim." *Ex parte Denton*, 399 S.W.3d 540, 544 (Tex. Crim. App. 2013). If the claim is clearly apparent, no legitimate state interest is served by enforcing the usual rules of procedural default. *Id.*

### B. Analysis

■■■■ Appellant argues that punishing him for both counts essentially punishes him twice for assaulting David. The State responds that the convictions do not violate double jeopardy because appellant committed several distinct aggravated assaults against David. We agree with appellant.

sel might have wanted to make the issues part of his defense, we must examine the record for harm as it is and not how it might look if the trial court had made different rulings.

Appellant does not argue on appeal that the granting of the State's motion in limine was error.

Applying the *Blockburger* analysis, the Texas Court of Criminal Appeals has held that "a defendant may not be punished for both a burglary with the commission of a felony during the burglary and the underlying felony itself." *Duran v. State*, 492 S.W.3d 741, 745 (Tex. Crim. App. 2016); *see Langs v. State*, 183 S.W.3d 680, 686 (Tex. Crim. App. 2006) (reaching the same holding). The Court reasoned that while burglary requires proof of illegal entry, a fact which is not required to prove the underlying felony, the State must nonetheless prove all the elements of the underlying felony to prove the burglary. *Langs*, 183 S.W.3d at 686. "Thus, the felony offense would not require proof of an additional element that the burglary offense does not also require." *Id.*

In this case, the State alleged under Count 1 that appellant gained entrance to David's house without his consent and committed aggravated assault against him there. Under Count 2, the State alleged that appellant committed aggravated assault with a deadly weapon by causing David bodily injury by shooting him with a handgun. The State argues that appellant is not being punished twice for the underlying felony because he committed a separate and distinct aggravated-assault offense against David. *See Sanchez v. State*, 269 S.W.3d 169, 170 (Tex. App.–Amarillo 2008, pet. ref'd) (observing that double jeopardy is not violated when "separate and distinct offenses occur in the same transaction"). We disagree. It is true that the application paragraph for Count 1 does not specify the way in which appellant committed aggravated assault, but the jury charges for both counts required the jury to find that appellant committed aggravated assault in the same manner: using or exhibiting a deadly weapon while causing bodily injury to David. As in *Langs*, even though Count 1 required proof of illegal entry when Count 2 did not, Count 2 did

not require proof of any fact not also required to prove Count 1. *See* 183 S.W.3d at 686. We reject the State's argument.

We conclude that a double jeopardy violation is apparent on the face of the record because punishing appellant under both counts clearly subjects him to multiple punishments for the same offense. *See id.*; *see also Rangel v. State*, 179 S.W.3d 64, 72 (Tex. App.–San Antonio 2005, pet. ref'd) (sustaining a double-jeopardy issue under similar facts). When a double jeopardy violation is apparent on the face of the record, no legitimate state interest is served by enforcing the usual rules of procedural default. *See Ex parte Denton*, 399 S.W.3d at 544. Appellant has preserved his double jeopardy claim for our review.

When a defendant has been convicted of two offenses which are the "same" for double jeopardy purposes, the appropriate remedy is to affirm the conviction on the most serious offense and vacate the other. *Duran*, 492 S.W.3d at 745. The most serious offense "is the offense of conviction for which the greatest sentence was assessed." *Ex parte Cavazos*, 203 S.W.3d 333, 338 (Tex. Crim. App. 2006). Appellant received a forty-year sentence on Count 1 and a twenty-year sentence on Count 2. Count 1 is the most serious offense and should be retained. *See id.*

We sustain appellant's second issue.

### IV. CONCLUSION

We vacate and dismiss Count 2 (appellate cause No. 13–15–00601–CR) and affirm the trial court's judgment on Count 1 (appellate cause No. 13–15–00600–CR).