**Johnny Omar RODRIGUEZ, Appellant**

**v.**

**The STATE of Texas, Appellee**

**NO. 14-16-00107-CR**

Court of Appeals of Texas,
Houston (14th Dist.).

Opinion Filed June 20, 2017

Rehearing Overruled August 1, 2017

Discretionary Review Refused
October 25, 2017

Cheri Duncan, Houston, TX, for Appellant.

Kimberly Aperauch Stelter, Houston, TX, for State.

Panel consists of Justices Boyce, Busby, and Wise.

## OPINION

Ken Wise, Justice

Appellant Johnny Omar Rodriguez was indicted for aggravated robbery. After appellant testified, the trial court charged the jury on the lesser-included offense of aggravated assault and on the defense of self-defense, but the court refused a charge on the defense of necessity. The jury found appellant guilty of aggravated assault and assessed punishment at twenty-five years' confinement.

Appellant challenges his conviction in a single issue: whether the trial court's refusal of the necessity instruction was harmful error. We affirm because appellant has not suffered any harm.

### I. BACKGROUND

The complainant, Daniel Hamilton, and appellant both testified at trial. Hamilton testified that he was riding his bike to a Social Security office when appellant and another man stopped their car near him. Appellant got out and called Hamilton a "bitch." Hamilton hopped off his bike and retorted in kind. Appellant snatched Hamilton's phone out of Hamilton's jacket pocket, and Hamilton snatched it back. Appellant lifted his shirt to show Hamilton a handgun, saying he would shoot and whip Hamilton.

Appellant pulled out the gun and took Hamilton's phone again. Appellant aimed the gun at Hamilton. Hamilton tried to take the gun away, but appellant pulled back and hit Hamilton in the forehead with the gun. The clip fell out, but appellant put the clip back in, and the two started fighting for the gun. Appellant shot Hamilton; the bullet traversed Hamilton's ear, shoulder, and back. Appellant ran back to the car with the phone and took off. Hamilton flagged down a driver and received medical attention. Hamilton testified that he had never met appellant before the encounter.

Appellant told a different story. He testified that he had sold methamphetamine to Hamilton frequently over the course of four months. Appellant was "fronting" Hamilton the meth—selling the meth to Hamilton on credit. Hamilton owed appellant $900 for the last ounce of meth, and appellant had not seen Hamilton for a while. When appellant saw Hamilton riding a bike, appellant got out of the car to confront Hamilton. Appellant asked Hamilton for the money, and Hamilton was giving answers that led appellant to believe that Hamilton was not going to pay. Appellant got mad.

Appellant testified, "I was going to get physical," so he took off his jacket and put it on the car door. Appellant thought they were "just going to fight or something." When Appellant turned around, however, Hamilton was pulling a handgun out of his waistband. Appellant reached for the gun,

and he was shot in the hand. The men tripped over the bicycle, and appellant landed on top of Hamilton. Appellant and Hamilton were "tussling" over the gun, and appellant got it.

The men stood up, and Hamilton lunged at appellant to try to take the gun back. Appellant was thinking "if he takes the gun from me—because I only got one hand—he is going to shoot me, probably in the end killing me." So, appellant ejected the clip and hit Hamilton on the head with the gun.

Hamilton charged at appellant again, and appellant tried to hit Hamilton with the gun. But Hamilton grabbed appellant's hand. Appellant testified that he was afraid, and he thought it was immediately necessary to defend himself. He testified, "I felt like my life was in danger." He didn't want to be shot again.

A shot went off, hitting Hamilton. Appellant testified that it wasn't his intention to shoot Hamilton. The gun went off accidentally. Appellant didn't know there was still a bullet in the chamber of the gun.

Appellant panicked after he shot Hamilton. He fled the scene. He didn't try to get help. He went to a hospital two days later for the injury to his hand. He explained, "I just felt like I was at fault, even though—just for starting it, what the incident was related to and everything.... I just felt guilty for what happened." Appellant admitted that he shot and caused bodily injury to Hamilton. But appellant testified that he didn't take anything from Hamilton, and there was no robbery.

At trial, appellant requested jury instructions on self-defense and necessity. The trial court included a self-defense instruction in the charge but overruled appellant's request for a necessity instruction.

## II. No Harm

We assume without deciding that the trial court should have instructed the jury on the requested defense of necessity. But we hold that appellant was not harmed by the omission.

### A. Legal Principles

When the trial court erroneously omits a defensive instruction over objection, the *Almanza* framework provides that the judgment of conviction must be reversed if the appellant suffered some harm. *Gonzales v. State*, 474 S.W.3d 345, 350 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (citing *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)); *see Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985). Reversal is required under this standard if the error is calculated to injure the rights of the appellant. *Reeves*, 420 S.W.3d at 816 (citing *Almanza*, 686 S.W.2d at 171). We must determine whether the appellant suffered some actual, rather than merely theoretical, harm from the error. *Id.*

This analysis requires a reviewing court to consider (1) the arguments of counsel, (2) the jury charge as a whole, (3) the entirety of the evidence, and (4) any other relevant factors. *Id.* Although the absence of an instruction for a confession-and-avoidance defense, such as necessity or self-defense,[1] is often harmful because the appellant admits all elements of the offense, we must always perform a record-specific analysis for harm. *See Cornet v. State*, 417 S.W.3d 446, 451 (Tex. Crim. App. 2013).

---

1. *See Juarez v. State*, 308 S.W.3d 398, 404 (Tex. Crim. App. 2010) (holding that the necessity defense embraces the confession-and-avoidance doctrine, and noting that the doctrine has been applied to self-defense).

## B. Arguments

During voir dire, the State discussed the law of self-defense. Neither side referred to the necessity defense. Both sides waived opening arguments. During closing argument, trial counsel admitted that appellant shot Hamilton and said, "Yes, there was an aggravated assault with a deadly weapon, a gun." Counsel asked the jury to find appellant not guilty based on self-defense, and the jury was instructed on self-defense.

On appeal, appellant contends that his "case was built solely on justification." But nothing from the arguments of counsel at trial would lead to the conclusion that his defensive theory was built upon the defense of necessity rather than self-defense.[2] Therefore, this factor weighs against a finding of harm. See Cornet, 417 S.W.3d at 454–55 (holding that the error of omitting a medical-care defensive instruction did not cause some harm in part because trial counsel did not question the jury about the defense during voir dire or invoke the defense in his opening statement; "counsel's request for the medical-care defense appears to be an afterthought and does not appear to be the primary focus of his defensive theory at trial"); Rogers v. State, Nos. 13-15-00600-CR, 13-15-00601-CR, 527 S.W.3d 329, 333, 2017 WL 930017, at *2 (Tex. App.—Corpus Christi Mar. 9, 2017, no pet. h.) (holding that the error of omitting necessity and self-defense instructions was harmless in part because trial counsel did not argue the defenses to the jury); cf. Dugar v. State, 464 S.W.3d 811, 821–22 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (holding there was harmful error from the omission of a self-defense instruction when the entire case was built around that theory, as shown by defense counsel's questioning during voir dire and counsel's opening statement concerning self-defense).

Indeed, when the trial court asked appellant during the charge conference whether the necessity defense would be "the same as self-defense," trial counsel responded, "Belts and suspenders, Judge." Thus, counsel appeared to acknowledge the redundancy of the necessity instruction in this case.[3]

## C. Jury Charge and Evidence

To evaluate harm from this type of jury charge error—when the jury received an instruction for one confession-and-avoidance defense but not another—we look to whether the defenses overlapped to such an extent that the self-defense instruction precluded harm from the absence of a necessity instruction. See Bowen v. State, 187 S.W.3d 744, 746 (Tex. App.—Fort Worth 2006, no pet.).[4] We ask whether the jury's rejection of appellant's self-defense theory provides us with an assurance that appellant suffered no harm. See Barrios v.

---

**2.** Self-defense and necessity are Chapter 9 justification defenses. See Tex. Penal Code §§ 9.02, 9.22, 9.31; see also Alonzo v. State, 353 S.W.3d 778, 782 (Tex. Crim. App. 2011) ("An assertion of a Chapter 9 justification defense is an assertion that the defendant's actions were justified.").

**3.** See United States v. Carona, 660 F.3d 360, 369 (9th Cir. 2011) ("The term 'belt and suspenders' is sometimes use to describe the common tendency of lawyers to use redundant terms to make sure that every possibility is covered.").

**4.** But see Darty v. State, 994 S.W.2d 215, 218, 220 (Tex. App.—San Antonio 1999, pet. ref'd) (reversing conviction for resisting arrest without a substantial harm analysis when the trial court instructed the jury on self-defense but not on necessity; reasoning that all of the evidence "boiled down to a swearing match between two witnesses").

*State*, 389 S.W.3d 382, 397 (Tex. App.—Texarkana 2012, pet. ref'd).

■ We begin by reviewing the necessity instruction that appellant did not receive. The statute provides that conduct is justified if

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

Tex. Penal Code § 9.22. A proper jury charge on the defense of necessity includes the first two subsections, but not the third. *See Williams v. State*, 630 S.W.2d 640, 642–43 (Tex. Crim. App. 1982) (noting that the third subsection is a question of law, and the jury may not consider it); *see also Leach v. State*, 726 S.W.2d 598, 600 (Tex. App.—Houston [14th Dist.] 1987, no pet.); Comm. on Pattern Jury Charges—Criminal, State Bar of Tex., *Texas Criminal Pattern Jury Charges: Criminal Defenses* § 28.2 (2015). To be entitled to this instruction, there must be some evidence that the defendant "reasonably believed a *specific harm was imminent*" and that the defendant "reasonably believed the criminal conduct was *immediately necessary* to avoid the imminent harm." *Pennington v. State*, 54 S.W.3d 852, 857 (Tex. App.—Fort Worth 2001, pet. ref'd).

The jury charge included an instruction for self-defense, which exceeded three pages in length. In pertinent part, the application paragraphs appeared as follows:

Therefore, if you find from the evidence beyond a reasonable doubt that the defendant, Johnny Omar Rodriguez, did cause bodily injury to Daniel Hamilton by using or exhibiting a deadly weapon, namely, a firearm, as alleged, but you further find from the evidence, as viewed from the standpoint of the defendant at the time, that from the words or conduct, or both of Daniel Hamilton it reasonably appeared to the defendant that his life or person was in danger and there was created in his mind a reasonable expectation or fear of death or serious bodily injury from the use of unlawful deadly force at the hands of Daniel Hamilton, and that acting under such apprehension and reasonably believing that the use of deadly force on his part was immediately necessary to protect himself against Daniel Hamilton's use or attempted use of unlawful deadly force, he used or exhibited a deadly weapon, namely, a firearm, against Daniel Hamilton, then you should acquit the defendant on the grounds of self-defense; or if you have a reasonable doubt as to whether or not the defendant was acting in self-defense on said occasion and under the circumstances, then you should give the defendant the benefit of that doubt and say by your verdict, not guilty.

If you find from the evidence beyond a reasonable doubt that at the time and place in question the defendant did not reasonably believe that he was in danger of death or serious bodily injury, or that the defendant, under the circumstances as viewed by him from his standpoint at the time, did not reasonably believe that the degree of force actually used by him was immediately necessary to protect himself against Daniel Hamilton's use or attempted use of unlawful deadly force, then you should find against the defen-

dant on the issue of self-defense as it applies to aggravated assault.[5]

Appellant contends that the self-defense statute "sets up more barriers to its use than the necessity statute does," and that the self-defense instruction here "included those barriers, and more." Appellant points to the "five circumstances" in which self-defense is not available as a defense, citing Section 9.31(b) of the Penal Code.[6] Of those five circumstances, however, only one was included in the abstract portion of the charge: that the use of force is not justified in response to verbal provocation alone. See Tex. Penal Code § 9.31(b)(1).

Appellant testified that he used deadly force not in response to verbal provocation, but in response to Hamilton's use or attempted use of deadly force. Thus, the jury's rejection of the self-defense theory could not have rested on the verbal-provocation exception. The instructions and evidence in this case distinguish it from *Bowen*.

In *Bowen*, on remand from the Court of Criminal Appeals, the Fort Worth Court of Appeals held that the defendant was harmed by the omission of a necessity instruction. 187 S.W.3d at 747. The defendant received a self-defense instruction, but the charge included additional instructions about the use of force against a peace officer. See id. at 746–47.[7] Under the evidence in *Bowen*, the jury rationally could have found the elements of the necessity

defense while rejecting the elements of self-defense concerning the use of force against a peace officer. Id. at 747. The defensive theories of necessity and self-defense diverged to such an extent that the error was harmful. See id.

In an unpublished opinion, the Corpus Christi Court of Appeals similarly found harmful error from the omission of a necessity instruction even though the defendant had received a self-defense and defense-of-third-parties instruction. See *Fox v. State*, No. 13-03-230-CR, 2006 WL 2521622, at *4 (Tex. App.—Corpus Christi Aug. 31, 2006, pet. ref'd) (mem. op., not designated for publication). The court of appeals focused on the third-party defense and emphasized that the instruction required that the defendant reasonably believed that a reasonable person in the third person's situation would not have retreated. See id. Because the necessity defense did not include the retreat requirement, a rational jury could have concluded that the defendant met the elements of necessity but not the other defenses. See id. Therefore, the defensive theories diverged to such an extent that the error was harmful. See id.

The instructions and evidence in this case make the harm analysis more analogous to *Barrios*. In *Barrios*, the Texarkana Court of Appeals held that the defendant was not harmed by the omission of a defense-of-third-parties instruction when

---

**5.** Appellant contends that the first paragraph of this instruction shifted the burden to appellant to prove self-defense. This court has rejected appellant's argument concerning similar instructions. See, e.g., *Brotherton v. State*, 666 S.W.2d 126, 127–28 (Tex. App.—Houston [14th Dist.] 1983, pet. ref'd) (citing *Luck v. State*, 588 S.W.2d 371 (Tex. Crim. App. 1979)).

**6.** Summarized, Section 9.31(b) provides that force is not justified (1) in response to verbal provocation alone, (2) to resist arrest except

under certain circumstances, (3) if the actor consented to the use of force used by the other, (4) if the actor provoked the other's use of force, unless certain conditions are met, and (5) if the actor sought a discussion while illegally carrying, possessing, or transporting a weapon. See Tex. Penal Code § 9.31(b).

**7.** These instructions related to one of the "five circumstances" in which self-defense is unavailable. See supra note 5.

the jury charge included a necessity instruction. 389 S.W.3d at 398. The court, noting that the jury found that the State had disproved at least one prong of the necessity defense, asked itself whether the jury would have also found that the State disproved at least one prong of the third-party defense. *See id.* Although the defenses had "admittedly different" formulations, nothing in the record suggested that the jury might have rejected the necessity defense while acquitting the defendant under the third-party defense. *Id.* Thus, the court of appeals found no actual, rather than theoretical, harm. *Id.*

■ Here, the jury rejected appellant's claim of self-defense. Thus, the jury found that the State negated at least one essential element of self-defense beyond a reasonable doubt. *See id.* (reasoning that the jury necessarily found that the State disproved at least one prong of the submitted defense); *see also McClesky v. State*, 224 S.W.3d 405, 411 n.1 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (noting that the State must negate one essential element of self-defense beyond a reasonable doubt). Accordingly, the jury found that the State proved beyond a reasonable doubt either (1) appellant did not reasonably believe that he was in danger of serious bodily injury, or (2) appellant did not reasonably believe that the degree of his force was immediately necessary to protect himself against Hamilton's use or attempted use of unlawful deadly force.

If the jury rejected the self-defense theory based on the first prong—no reasonable belief that appellant was in danger— then the jury also would have rejected the necessity defense because appellant did not reasonably believe that a specific harm was imminent. If the jury rejected the self-defense theory based on the second prong—no reasonable belief that force was immediately necessary to protect himself from Hamilton—then the jury also would have rejected the necessity defense because appellant did not reasonably believe that shooting Hamilton was immediately necessary.

Appellant has not identified, and we cannot find, any evidence in the record specific to appellant's necessity defense such that the jury might have rejected appellant's self-defense theory while accepting his necessity theory. Appellant's conduct was the same: shooting Hamilton. The harm sought to be avoided was the same: being shot by Hamilton. None of the evidence and instructions concerning self-defense set up any barriers that could have led to a finding of necessity without a finding of self-defense. *Cf. Bowen*, 187 S.W.3d at 746–47 (harmful error because the jury could have rejected self-defense on a theory that did not overlap with necessity).

Accordingly, the necessity instruction was pure "belt and suspenders." The instructions and evidence overlapped to such a degree that we are assured appellant suffered no harm. *See Barrios*, 389 S.W.3d at 397.

Appellant's sole issue is overruled.

### III. CONCLUSION

Having overruled appellant's sole issue, we affirm the trial court's judgment.