**Opinion issued October 1, 2020**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-19-00428-CR

—————————————

**JARED PATTON ROARK, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

———————————————————————————————————————

**On Appeal from County Court at Law No. 7**
**Travis County,[1] Texas**
**Trial Court Case No. C-1-CR-16-216594**

———————————————————————————————————————

## MEMORANDUM OPINION

---

[1] The Texas Supreme Court transferred this appeal from the Court of Appeals for the Third District of Texas. *See* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases between courts of appeals).

A jury convicted appellant, Jared Patton Roark, of the offense of evading arrest or detention. The trial court assessed his punishment at one year of jail fully probated, two years of community supervision, a $4,000 fine fully probated, eighty hours of community service, and completion of a cognitive life skills class. In his sole point of error, appellant argues that the trial court reversibly erred by denying his request for a jury instruction on the defense of necessity. We reverse and remand.

## Background

On November 13, 2016, appellant participated in a protest in downtown Austin following the then-recent election of President Donald Trump. Several hundred anti-Trump protestors encountered Joseph Weidknecht, a lone counter-protestor carrying a pro-Trump sign, in front of the Texas Capitol.

While law enforcement monitored the protest, Department of Public Safety (DPS) Troopers Hoffman and Goodson observed people trying to ignite Weidknecht's sign with a lighter. Troopers Hoffman and Goodson began moving toward the crowd to create a buffer between Weidknecht and the protestors. As they entered the crowd, the troopers saw appellant use a lighter to try to set Weidknecht's sign on fire. Trooper Hoffman testified that he and Trooper Goodson, who were both dressed in law enforcement uniform, identified themselves as police and approached appellant to arrest him.

When Trooper Goodson attempted to apprehend appellant, appellant began walking away. Trooper Goodson grabbed appellant and they fell to the ground. Trooper Goodson testified that the crowd became agitated and began pulling at them. He described the situation as a "complete loss of control" and "mayhem." Trooper Goodson testified that appellant broke free and ran across the street where he tripped and fell. The video from Officer Goodson's body camera was admitted into evidence as State's Exhibit 3.

Trooper Hoffman testified that people began yelling and grabbing Trooper Goodson and appellant as Trooper Hoffman tried to pull people off of Trooper Goodson. Trooper Hoffman testified that Trooper Goodson and appellant were dragged a short distance when appellant broke free and began running across the street. Appellant fell down before he reached the other side of the street. Trooper Hoffman testified that he heard appellant state that his shoulder had been dislocated, something was done to his neck, and that he needed to go to the hospital.

Joshua Pineda, an activist who videoed the protest, testified that he saw a trooper pin appellant to the ground and put him in a chokehold that lasted about ten seconds. Pineda testified that he saw appellant's body being dragged along the ground and other activists trying to help appellant escape. Pineda testified that he saw appellant run into the street after being released and collapse in the street. Pineda testified that appellant was "fleeing attack." After appellant was

3

apprehended, Pineda heard appellant yell several times "you broke my neck." In Pineda's video of the protest, which was admitted into evidence as Defense Exhibit 8, appellant can be heard telling Trooper Hoffman, "I ran because people were stomping on me."

Following his release from jail the next day, appellant was admitted to the hospital where he was diagnosed with a spinal fracture. Appellant's medical records were admitted into evidence as Defense Exhibit 18.

Appellant was charged with the offense of evading arrest or detention in the instant case and with resisting arrest, search, or transportation and assault by contact in companion case C-1-CR-16-216595. The cases were tried jointly to a jury. Appellant did not testify.

At the conclusion of trial, appellant requested that the trial court instruct the jury on the defense of self-defense with regard to the charge of resisting arrest, search, or transportation charge. The trial court granted appellant's request. The jury found appellant not guilty of the offense of resisting arrest, search, or transportation.

Appellant also requested that the trial court instruct the jury on the defense of necessity with respect to the charged offense of evading arrest or detention. The State argued, among other things, that appellant did not testify and admit the conduct and, therefore, he was not entitled to the requested instruction. The trial court agreed

4

and denied appellant's request. The jury found appellant guilty of the charged offense of evading arrest or detention. This appeal followed.

## Discussion

In his sole point of error, appellant contends that the trial court committed reversible error by denying his request for a jury instruction on the defense of necessity.

### A. Standard of Review and Applicable Law

We apply a two-step analysis in reviewing a claim of charge error. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). First, we determine whether error exists in the charge. *Id.* If error does exist, we review the record to determine whether the error was harmful. *Id*.

The trial court must provide the jury with "a written charge distinctly setting forth the law applicable to the case." *Walters v. State*, 247 S.W.3d 204, 208 (Tex. Crim. App. 2007) (quoting TEX. CODE CRIM. PROC. art. 36.14). The trial court must instruct the jury on statutory defenses, affirmative defenses, and justifications whenever they are raised by the evidence in the case. *Id.* at 208–09. "A defendant is entitled to an instruction on every defensive issue raised by the evidence, regardless of whether the evidence is strong, feeble, unimpeached, or contradicted, and even when the trial court thinks the testimony is not worthy of belief." *Id.* at 209. When reviewing a trial court's ruling denying a requested defensive

instruction, we view the evidence in the light most favorable to the defendant's requested instruction. *See Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006). We review the trial court's decision not to include a defensive issue in the jury charge for an abuse of discretion. *See Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000).

A person commits the offense of evading arrest or detention if he (1) intentionally flees (2) from a person he knows is a peace officer or federal special investigator (3) attempting lawfully to arrest or detain him. TEX. PENAL CODE § 38.04(a); *Farrakhan v. State*, 263 S.W.3d 124, 134 (Tex. App.—Houston [1st Dist.] 2006), *aff'd*, 247 S.W.3d 720 (Tex. Crim. App. 2008).

Necessity is a justification defense that excuses a defendant's otherwise unlawful conduct if (1) the defendant reasonably believed the conduct was immediately necessary to avoid imminent harm; (2) the desirability and urgency of avoiding the harm clearly outweighed, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear. TEX. PENAL CODE §§ 9.02, 9.22; *Young v. State*, 991 S.W.2d 835, 838 (Tex. Crim. App. 1999). Necessity is a confession-and-avoidance defense, meaning that a defendant is not entitled to a necessity instruction unless he admits to the conduct—both the act and the culpable mental state—of the charged

6

offense and then offers necessity as a justification. *See Juarez v. State*, 308 S.W.3d 398, 399 (Tex. Crim. App. 2010). In other words, the defendant must "admit" or confess to violating the statute under which he is being tried, then offer necessity as a justification for his otherwise criminal conduct. *See Young*, 991 S.W.2d at 838.

## B. Analysis

Appellant contends that the trial court erred by denying his request for a necessity instruction on the allegedly erroneous belief that appellant did not satisfy the confession-and-avoidance doctrine because he did not personally testify.[2] Appellant acknowledges that the Court of Criminal Appeals has not directly answered the question regarding whether a defendant must testify but he asserts that the decisions discussed below demonstrate that the Court has expanded what it means for a defendant to admit the conduct.[3]

---

[2]   It is undisputed that appellant neither testified nor stipulated to the elements of the charged offense.

[3]   In its brief, the State agrees that the Court of Criminal Appeals has yet to decide whether the confession-and-avoidance doctrine requires the defendant to actually testify before he may receive a requested instruction on a defense governed by the doctrine. It notes, however, that at least one intermediate court has concluded that a defendant can confess to the elements of the offense without testifying. *See Gomez v. State*, 380 S.W.3d 830, 834 (Tex. App.—Houston [14th Dist.] 2012, pet ref'd).

In a recent unpublished memorandum opinion, this Court stated:

> We do not hold that, to be entitled to an instruction on a confession and avoidance defense, the defendant himself must testify and admit on the witness stand to the otherwise criminal conduct. Recent cases from the Court of Criminal Appeals have held that "the defensive evidence" must essentially

7

### 1. *Denial of Necessity Instruction*

In *Shaw v. State*, the defendant was convicted of recklessly causing injury to a child. 243 S.W.3d 647, 648 (Tex. Crim. App. 2007). On appeal, the defendant complained that the trial court erred in failing to instruct the jury on the "Good Samaritan" defense. *See id.* The court of appeals held that the trial court did not err in refusing to submit the requested instruction because the evidence adduced at trial did not raise the Good Samaritan defense. *Id.*

The Court of Criminal Appeals noted that "[t]he Good Samaritan defense is, on its face, a confession and avoidance or 'justification' type of defense." *Id.* at 659. The Court stated that, with respect to defenses such as necessity, "a defensive instruction is only appropriate when the defendant's defensive evidence essentially admits to every element of the offense *including* the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct." *Id.* (emphasis in original). The Court noted that the defendant had pointed to no particular evidence in the record from which it could rationally be inferred that she harbored some culpable mental state with respect to causing a head injury in the course of

---

admit every element of the offense. *See, e.g., Cornet v. State*, 417 S.W.3d 446, 451 (Tex. Crim. App. 2013); *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007).

*Jones v. State*, No. 1495266, 2020 WL 4516992, at *9 n.5 (Tex. App.—Houston [1st Dist.] Aug. 6, 2020, no pet. h.) (mem. op., not designated for publication).

administering CPR to the child. *See id.* at 660. The Court further noted that the defendant's defensive posture throughout trial seemed to be that she performed the CPR without any conscious awareness whatsoever that she might be thereby causing the child some head injury, and that such a defensive posture only served to negate the culpable mental element of the offense. *See id.* An attempt to negate an element of the charged offense does not provide the necessary confession or admission required for a necessity defense. *See id.* The charge of the court requiring the jury to find all the elements of the charge beyond a reasonable doubt is sufficient to meet that circumstance. *See id.* The Court concluded that the trial court did not err in refusing to submit the defensive instruction to the jury. *See id.*

In *Juarez v. State*, the defendant was convicted of aggravated assault on a peace office with a deadly weapon. *See* 308 S.W.3d 398, 401 (Tex. Crim. App. 2010). The defendant appealed the trial judge's refusal to instruct the jury on necessity. *See id.* The State argued that the defendant was not entitled to the instruction because he did not admit to all of the elements of the offense, in particular, the culpable mental state, which is a prerequisite for necessity. *See id.* The court of appeals determined that the defendant's testimony, admitting to the act (i.e., biting), even if by accident, was sufficient to entitle him to a necessity instruction. *See id.* Finding the error harmful, the court of appeals reversed the trial court's judgment. *See id.*

9

On the State's petition for discretionary review, the Court of Criminal Appeals agreed with the court of appeals that the trial court had erred in denying the defendant's request for a necessity instruction and that the error was harmful. *See id.* at 406. The Court stated that the confession-and-avoidance doctrine was satisfied because the defendant had both admitted the act and offered evidence from which the requisite mental state could be inferred, and the trial court was therefore required to instruct the jury on the necessity defense.[4] *See id.* at 405. In reaching its conclusion, the Court noted:

> Historically in necessity defense cases, we have said that a defendant must admit to the conduct. We made this assertion in cases in which the defendant testified and explicitly denied the conduct, either by denying the act or the culpable mental state or both. But in our most recent discussion of the doctrine in *Shaw v. State*, we expanded the admission requirement and said that a defendant's defensive evidence must admit to the conduct. Whether the confession and avoidance doctrine requires the former or the latter is not necessary to our resolution of this case because Juarez testified and a factfinder could reasonably infer from his testimony that he bit Officer Burge intentionally, knowingly or recklessly. We will leave it for a future necessity defense case to decide whether the confession and avoidance doctrine requires a defendant's own admission.

*Id.* at 405–06.

Later, in *Villa v. State*, the Court considered whether the defendant was entitled, under the confession-and-avoidance doctrine, to an instruction on the

---

[4]    The defendant testified that the officer who was lying on top of him was suffocating him.

medical-care defense on the charged offense of aggravated sexual assault. 417 S.W.3d 455, 462 (Tex. Crim. App. 2013). Quoting *Shaw*, the Court reiterated that "[a]n instruction on a confession and avoidance is appropriate only 'when the defendant's defensive evidence essentially admits to every element of the offense including the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct." *Id.* (quoting *Shaw*, 243 S.W.3d at 659).

Applying these cases to the one before us, we must determine whether appellant presented defensive evidence showing that he intentionally fled from a person he knew was a peace officer attempting lawfully to arrest or detain him because he reasonably believed that flight was necessary to avoid imminent harm. TEX. PENAL CODE § 38.04(a).

In support of his argument that he presented sufficient defensive evidence, appellant relies on Pineda's testimony and video of the protest and incident involving appellant. Pineda testified that he saw appellant interact with two uniformed DPS officers. He saw troopers "pile on top of [appellant]" and a trooper pin appellant to the ground and put him in a chokehold that lasted about ten seconds. Pineda testified that he saw appellant's body being dragged along the ground and other activists trying to help appellant escape. Pineda testified that he saw appellant run into the street after being released and collapse in the street. Pineda testified that appellant

11

was "fleeing attack." Pineda heard appellant repeatedly say "you broke my neck" as he was being arrested and loaded into a police wagon.

Pineda's video shows that Troopers Goodson and Hoffman were in full law enforcement uniform at the time of the incident. Various people in the crowd can be seen assaulting Weidknecht or attempting to steal or destroy his property, including flicking a lighter near his sign. The video also shows that while attempting to detain appellant, troopers tackled him and a DPS trooper pinned appellant to the ground. After appellant broke free, he ran away and fell in the street. In the video from Trooper Hoffman's body camera, appellant can be heard saying that he ran from the troopers to avoid being stomped.

A trial court errs in denying a requested defensive instruction if there is some evidence, from any source, which, when viewed in the light most favorable to the defendant, will support the elements of the defense. *Shaw*, 243 S.W.3d at 657–58 (stating that defense is raised by evidence "if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true"); *see also Jones v. State*, No. 01-18-00824-CR, 2020 WL 4516992, at *8 (Tex. App.—Houston [1st Dist.] Aug. 6, 2020, no pet. h.) (mem. op., not designated for publication). And, this is so "regardless of whether the evidence is strong, feeble, unimpeached, or contradicted, and even when the trial court thinks the testimony is not worthy of belief." *Walters*, 247 S.W.3d at

12

209. It also does not matter if other inconsistent defenses were raised. *See Shaw*, 243 S.W.3d at 658; *VanBrackle v. State*, 179 S.W.3d 708, 714 (Tex. App.—Austin 2005, no pet.) ("When the evidence is inconsistent and supports more than one defensive theory, the defendant is entitled to an instruction on every theory raised, even if the defenses themselves are inconsistent or contradictory."). With these principles in mind, and viewing the evidence in the light most favorable to appellant's requested instruction, we conclude that a jury could reasonably infer from this evidence that appellant's flight was intentional, he knew he was fleeing a peace officer, and the peace officer had reasonable suspicion to lawfully detain appellant in his investigation of a suspected assault. *See* TEX. PENAL CODE § 38.04(a).

Appellant contends that the evidence also supports a necessity instruction. *See Juarez*, 308 S.W.3d at 399 (stating defendant is not entitled to necessity instruction unless he admits conduct of charged offense and then offers necessity as justification). Necessity is a justification defense that excuses a defendant's otherwise unlawful conduct if (1) the defendant reasonably believed the conduct was immediately necessary to avoid imminent harm; (2) the desirability and urgency of avoiding the harm clearly outweighed, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and (3) a legislative purpose to exclude the justification claimed for the conduct does

13

not otherwise plainly appear. TEX. PENAL CODE §§ 9.02, 9.22; *Young*, 991 S.W.2d at 838.

Trooper Goodson testified that, as he held appellant on the ground, "the crowd became agitated . . . and started pulling at [appellant] and pulling at me." He described the situation as a "complete loss of control" and "mayhem." Trooper Hoffman testified that people grabbed Trooper Goodson and appellant and dragged them on the ground before appellant broke free, ran across the street, and fell. Trooper Hoffman testified that he heard appellant state that his shoulder had been dislocated, something was done to his neck, and that he needed to go to a hospital. Pineda testified that he heard appellant yell several times "you broke my neck" after he was apprehended. In Pineda's video, appellant can be heard telling Trooper Hoffman, "I ran because people were stomping on me." The medical records reflect that appellant was diagnosed with a spinal fracture for which he underwent surgery.

From this evidence, a jury could find that it was reasonable for appellant, who had already been seriously injured in the chaos by this time, to believe that fleeing the scene was immediately necessary to avoid additional imminent harm. Further, the desirability and urgency of avoiding further injury (or possibly death) clearly outweighed, according to ordinary standards of reasonableness, the harm in appellant's fleeing law enforcement to avoid being further injured in the mayhem. *See, e.g.*, *Darty v. State*, 994 S.W.2d 215, 219 (Tex. App.—San Antonio 1999, pet.

14

ref'd) (holding trial court erred in refusing defendant's requested charge on necessity in trial for resisting arrest where desirability and urgency of not being able to breathe due to officer's alleged chokehold on defendant outweighed harm in defendant's kicking at or using his own arm to force officer to release hold); *see also Juarez v. State*, No. 12-08-00009-CR, 2009 WL 768595, at *4 (Tex. App.—Tyler Mar. 25, 2009) (mem. op., not designated for publication) (holding trial court erred in refusing to submit defendant's requested charge on necessity in trial for aggravated assault against public servant where urgency of defendant's inability to breathe due to his face being held in dirt outweighed harm from defendant's biting officer's finger to release him), *aff'd*, 308 S.W.3d 398, 399 (Tex. Crim. App. 2010). Finally, we see nothing in the text of section 38.04 that plainly indicates a legislative purpose to limit the necessity defense's application. *See Bowen v. State*, 162 S.W.3d 226, 228–229 (Tex. Crim. App. 2005) ("[S]ection 9.22's plain language indicates that the defense of necessity may be applicable in every case unless specifically excluded by the legislature."). We conclude that the necessity defense applies to the charged offense of evading arrest or detention. *See* TEX. PENAL CODE § 9.22(3).

### 2. *Harm*

Having found that the trial court erred in refusing to submit appellant's requested charge on necessity, we must determine whether the error was harmless. Failure to give a defensive instruction on an issue raised by the evidence, where the

error is properly preserved, will call for reversal unless the error is harmless. *See Abdnor v. State*, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994). The record reflects that appellant timely requested an instruction on necessity. Therefore, the trial court's error in denying the instruction requires reversal so long as there has been "*some* harm" to appellant. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g) (emphasis original). When conducting a harm analysis, we may consider four factors: (1) the charge itself; (2) the state of the evidence including contested issues and the weight of the probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Barron v. State*, 353 S.W.3d 879, 884 (Tex. Crim. App. 2011) (quoting *Almanza*, 686 S.W.2d at 171).

Appellant's defense at trial was that he ran from the police to avoid further serious bodily injury. A significant portion of the testimony focused on the force used by the troopers against appellant and the injury he sustained as a result of that force. Pineda testified that he saw appellant's body being dragged along the ground and that appellant was "fleeing attack." On Pineda's video, appellant can be heard telling Trooper Hoffman, "I ran because people were stomping on me." Trooper Goodson testified that the crowd became agitated after he grabbed appellant and they fell to the ground—describing the situation as a "complete loss of control" and

16

"mayhem"—and that appellant broke free and ran across the street, where he tripped and fell.

In his opening statement, defense counsel argued that the evidence would show that appellant ran from a stampede and that he fell because his neck had been broken. In his closing argument, counsel told the jury that "the only thing [appellant] had going through his mind was how do I keep from getting trampled by the crowd who's stepping everywhere and how do I keep further injuries from myself from happening."

Finally, and perhaps most significantly, appellant was also on trial in a companion case for the offense of resisting arrest, search, or transportation and assault by contact stemming from the same episode. At the conclusion of trial, the trial court granted appellant's request for an instruction on self-defense with regard to the charge of resisting arrest, search, or transportation charge. The jury returned a verdict of not guilty with respect to the resisting offense. In this case, where the trial court refused the requested defense instruction, the jury found appellant guilty. Because the jury charge did not include a necessity defense, the jury was not free to interpret the evidence in such a way that supported a finding of necessity if they believed appellant's justification defense. The trial court's failure to instruct the jury on necessity precluded this interpretation. *See Bowen v. State*, 187 S.W.3d 744, 747 (Tex. App.—Fort Worth 2006, no pet.); *see also Juarez*, 2009 WL 768595, at *6.

We conclude that appellant suffered some harm from the trial court's refusal to submit to the jury his requested instruction on the defense of necessity. *See Abdnor*, 871 S.W.2d at 732. Accordingly, we sustain appellant's sole point of error.

## Conclusion

We reverse appellant's conviction and remand this case to the trial court for a new trial in accordance with this opinion.

Russell Lloyd
Justice

Panel consists of Justices Keyes, Lloyd, and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).